In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2186

MIGUEL QUEZADA-LUNA,

*Petitioner,*

*v.*

ALBERTO R. GONZALES, Attorney General
of the United States,

*Respondent.*

On Petition for Review of an Order of
the Board of Immigration Appeals.
No. A74-311-495

SUBMITTED NOVEMBER 21, 2005[Œ]—DECIDED MARCH 3, 2006

Before RIPPLE, MANION, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Miguel Quezada-Luna is a native
and citizen of Mexico who became a lawful permanent
resident of the United States in 1997. In March 2003 he
was convicted of aggravated discharge of a firearm, 720
ILCS 5/24-1.2(a)(1). Based on that conviction, an immigra-
tion judge found Quezada-Luna removable under 8 U.S.C.

---

[Œ] This court previously granted the petitioner's unopposed motion
to waive oral argument. Thus, the petition for review is submitted
on the briefs and the record. See FED. R. APP. P. 34(f); Cir. R.
34(e).

§ 1227(a)(2), reasoning that the crime was both a firearm offense, see 8 U.S.C. § 1227(a)(2)(C), and an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii). On appeal to the Board of Immigration Appeals, Quezada-Luna conceded removability but argued that his offense was not a "crime of violence," as that term is defined in 8 U.S.C. § 1101(a)(43)(F) (referring back to 18 U.S.C. § 16(b)). The reason he did so was because a conviction for an aggravated felony will apparently permanently preclude him from applying for readmission to the United States, at least without the special permission of the Attorney General. See 8 U.S.C. § 1182(a)(9)(A)(ii), (iii). If the only ground for his removal is the firearm offense, in contrast, the bar on applying for readmission lasts only ten years. The BIA upheld the removal order on both grounds, finding that the aggravated discharge of a firearm under the Illinois statute of conviction is a crime of violence and thus an aggravated felony. Quezada-Luna filed a timely petition for review from that decision.

## I

Before we turn to the merits of Quezada-Luna's petition, we must address a jurisdictional issue that has come to our attention. One way or the other, Quezada-Luna will be removed from the United States; the question is whether he must wait until ten years has elapsed before litigating the question whether his Illinois conviction was for a "crime of violence" and hence an aggravated felony, or if it is ripe for decision now.

In our view, now is the proper time to reach the issue. What Quezada-Luna is asking us to decide, in effect, is how severe a disability the current BIA order imposes on him. See *Patel v. City of Chicago*, 383 F.3d 569, 572 (7th Cir. 2004) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)) (stating that the ripeness doctrine, in part, prevents

courts from addressing a matter until the challenging parties are affected "in a concrete way"). Nothing can nor will happen over the next ten years that will change the nature of the Board's order. Quezada-Luna's prior Illinois conviction will not undergo a metamorphosis from one that might be characterized as an aggravated felony to one that should not be viewed that way. It is what it is today. *Cf. Simmonds v. INS*, 326 F.3d 351, 360 (2d Cir. 2003) (dismissing appeal for lack of ripeness because of uncertainty over "whether or when" the INS would execute a removal order against the petitioner); *United States v. Schoenborn*, 4 F.3d 1424, 1434 (7th Cir. 1993) (dismissing appeal for lack of ripeness where defendant sought to challenge the effect that a potential—and not yet awarded—revocation of his supervised release would have on the length of his sentence). We would not for a moment regard as unripe a criminal defendant's challenge to a sentence on the ground that the district court should not have added a two-level offense level enhancement for obstruction of justice, under § 3C1.1 of the U.S. Sentencing Guidelines, just because the defendant concedes that he will be serving some lower sentence even if his challenge is successful. We see no reason to treat the question of the duration of a prohibition on readmission to the United States any differently.

We note as well that the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231 (2005), has eliminated any further question about our jurisdiction to review this issue. Until its passage, the Immigration and Nationality Act (INA) "expressly preclude[d] the courts of appeals from exercising 'jurisdiction to review any final order of removal against any alien who is removable by reason of' a conviction for certain criminal offenses," including any aggravated felony or firearm offense. *Calcano-Martinez v. INS*, 533 U.S. 348, 350 (2001) (citing 8 U.S.C. § 1252(a)(2)(C)). All that could be reviewed was whether the earlier conviction was properly characterized as an aggravated felony. See*, e.g.*, *Bosede v.*

*Ashcroft,* 309 F.3d 441, 445-56 (7th Cir. 2002); *Yang v. INS,* 109 F.3d 1185, 1192 (7th Cir. 1997). As we noted in *Ramos v. Gonzales*, 414 F.3d 800 (7th Cir. 2005), "[t]he REAL ID Act has changed all of that. It amended INA § 242(a) to permit the courts of appeals on a proper petition for review to consider constitutional claims and questions of law. See REAL ID Act § 106(a)(1)(A)(iii), amending 8 U.S.C. § 1252(a)(2) by adding a new subpart (D). This amendment was effective on the date of the enactment of the statute, May 11, 2005, and applies to all appeals from removal orders 'issued before, on, or after the date of enactment.' REAL ID Act § 106(b)." 414 F.3d at 802. There is thus no jurisdictional bar that prevents us from addressing the issue Quezada-Luna has presented.

## II

As we noted earlier, Quezada-Luna conceded before the Board, and he continues to concede here, that he is removable under § 1227(a)(2)(C), the firearms provision. He argues here that the Board erred only in holding that the aggravated discharge of a firearm is a crime of violence. We have jurisdiction because the proper characterization of an offense is a question of law. See 8 U.S.C. § 1252(a)(2)(D); *Hamid v. Gonzales*, 417 F.3d 642, 645 (7th Cir. 2005); *Gattem v. Gonzales*, 412 F.3d 758, 762-63 (7th Cir. 2005); see also *Ramirez-Molina v. Ziglar*, No. 03-50596, 2006 WL 62862, at *4 (5th Cir. Jan. 12, 2006), *Elia v. Gonzales*, 431 F.3d 268, 271-72 (6th Cir. 2006); *Schroeck v. Gonzales*, 429 F.3d 947, 951 (10th Cir. 2005).

The INA defines "crime of violence" by reference to 18 U.S.C. § 16. That section reads as follows:

The term "crime of violence" means—

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

See *Leocal v. Ashcroft*, 543 U.S. 1, 8-9 (2004); *Solorzano-Patlan v. INS*, 207 F.3d 869, 875 n.10 (7th Cir. 2000); see also *Lisbey v. Gonzales*, 420 F.3d 930, 932-33 (9th Cir. 2005); *Chery v. Ashcroft*, 347 F.3d 404, 406-07 (2d Cir. 2003). The physical force must be "violent in nature—the sort that is intended to cause bodily injury, or at a minimum likely to do so." *Flores v. Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003); see also *Lisbey*, 420 F.3d at 932; *Chery*, 347 F.3d at 407-08.

Applying this definition, the Board concluded that aggravated discharge of a firearm, as charged in Quezada-Luna's case, qualifies as a crime of violence under both § 16(a) and § 16(b). We see nothing to criticize in that decision. It is undisputed that Quezada-Luna was convicted under subsection (a)(1) of 720 ILCS 5/25-1.2, which says that the offense of aggravated discharge of a firearm is committed whenever a person knowingly or intentionally "[d]ischarges a firearm at or into a building he or she knows or reasonably should know to be occupied." This both has as an element the "use, attempted use, or threatened use of physical force against the person or property of another" and describes conduct that presents a substantial risk that physical force against the person or property of another may be used.

Illinois decisions reinforce our conclusion. The state courts have made it evident that the "discharge" element of § 5-24-1.2(a) involves the use of physical force. See, *e.g.*, *People v. Boyd*, 825 N.E.2d 364, 370 (Ill. App. Ct. 2005) (describing the offense as a "forcible felony"); *People v. Toney*, 758 N.E.2d 138, 145-46 (Ill. App. Ct. 2003). Those decisions are consistent with the common-sense notion that

firing a gun is a use of physical force (indeed, deadly force). See, *e.g.*, *Blanford v. Sacramento County*, 406 F.3d 1110, 1115 n.9 (9th Cir. 2005) ("There is no question in this case that the deputies' firing of their guns at [plaintiff] constituted deadly force."); *Garcia v. City of Boston*, 253 F.3d 147, 149-50 (1st Cir. 2001) (upholding district court's finding that prison guards' shooting of violent prisoner was justifiable "use of force"); *Maravilla v. United States*, 60 F.3d 1230, 1233 (7th Cir. 1995) (classifying police officers' shooting of suspect's father as "use of deadly force").

Contrary to what Quezada-Luna implies, this court did not hold in *United States v. Jaimes-Jaimes*, 406 F.3d 845 (7th Cir. 2005), that discharging a firearm does not involve physical force. Quite the opposite: in *Jaimes-Jaimes* we explicitly recognized that the Wisconsin offense of "discharging a firearm into a vehicle or building," see Wis. Stat. § 941.20(2)(a), "requires that the defendant use force by shooting a gun." 406 F.3d at 850. *Jaimes-Jaimes* therefore undermines rather than assists Quezada-Luna's position.

The Board reasonably concluded that the Illinois conviction in this case was a "crime of violence" for purposes of the immigration laws, see 8 U.S.C. §§ 1227(a)(2)(A)(iii) (aggravated felony) and 1101(a)(43)(F) (defining "aggravated felony" to include a "crime of violence"). We therefore DENY Quezada-Luna's petition for review.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*