NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 11, 2008
Decided August 13, 2008

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 07-3145

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| *v.* | No. 07-CR-299-01 |
| JUAN CARLOS CALDERON-ASEVEDO, *Defendant-Appellant*. | Suzanne B. Conlon, *Judge*. |

**O R D E R**

Juan Carlos Calderon-Asevedo pleaded guilty without a plea agreement to one count of illegally reentering the United States after being deported. He was sentenced to 46 months' imprisonment based, in part, on the district court's belief that his previous conviction for aggravated discharge of a firearm constituted a crime of violence. On appeal, Calderon-Asevedo contends that it does not meet the definition of a crime of violence. We reserve ruling on this issue, which we find to be a close question, and we affirm Calderon-Asevedo's sentence on the basis of the district court's alternative reasoning that the higher sentence was warranted by his persistent history of criminal conduct.

Calderon-Asevedo is a Mexican citizen who came to the United States in 1983 with his parents when he was two years old and continued to live here until adulthood. In April 2000 he pleaded guilty to aggravated discharge of a firearm and other offenses and was sentenced to eight years' imprisonment.[1] *See* 720 ILCS 5/24-1.2(a)(1). The government removed Calderon-Asevedo from the United States in April 2003 after he served part of his sentence and told him that he could not reenter the country without permission. In May 2007 he was found at his father's house in Illinois and charged with illegally reentering the country after having been deported. *See* 8 U.S.C. § 1326(a); 6 U.S.C. § 202(4).

Calderon-Asevedo pleaded guilty to the one-count indictment. His PSR set his base offense level at 8. *See* U.S.S.G. § 2L1.2. The PSR included a 16-level increase because it viewed Calderon-Asevedo's previous conviction for aggravated discharge of a firearm as a felony crime of violence. *See id*. § 2L1.2(b)(1)(A). The application notes define "crime of violence" as

> any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

*Id*. § 2L1.2 cmt. n.1(B)(iii). According to the PSR, the indictment for that offense alleged that in October 1999 Calderon-Asevedo knowingly fired a gun at a building that he knew to be occupied. The government provided further factual background at Calderon-Asevedo's sentencing hearing, explaining that Calderon-Asevedo and his codefendent Miguel Guerrero-Salinas drove to the house of a rival gang member and fired at the window of the home, where an infant and toddler were sleeping. The PSR also included a three-level downward adjustment for acceptance of responsibility. The PSR calculated a criminal history category of III and an advisory sentencing range of 46 to 57 months.

Calderon-Asevedo objected to the PSR, arguing that his previous conviction should not be counted as a crime of violence under the sentencing guidelines. Calderon-Asevedo contended that his prior offense did not include as an element the use, attempted use, or threatened use of physical force against the person of another, which is required by the

---

[1] The Illinois statute which Calderon-Asevedo pleaded guilty to violating states that "[a] person commits aggravated discharge of a firearm when he or she knowingly or intentionally: discharges a firearm at or into a building he or she knows or reasonably should know to be occupied and the firearm is discharged from a place or position outside that building." 720 ILCS 5/24-1.2(a)(1).

definition in the guidelines. *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). Instead, Calderon-Asevedo suggested, his prior conviction should result in only an eight-level increase based on being an aggravated felony. *See id.* § 2L1.2(b)(1)(C). Calderon-Asevedo noted that Guerrero-Salinas, who was charged alongside him for the same Illinois offense, had not been subjected to the "crime of violence" increase at his own sentencing for unlawful reenty.[2] Calderon-Asevedo also argued that because he was culturally assimilated to the U.S. after many years of living here and has a U.S.-citizen wife and two children still living here, he should be found less culpable than the sentencing guidelines recommended.

The district court first acknowledged that the question of whether Calderon-Asevedo committed a crime of violence did not have a "clear cut" answer. The court continued, however, that the crime of firing at a building, knowing it was occupied, appeared "on its face" to be a crime of violence. In the alternative, the district court concluded that, even without the crime-of-violence enhancement, it would impose the same sentence based on the factors described in § 3553(a). The court opined that Calderon-Asevedo had an "extremely dangerous nature," as evidenced by the circumstances of his prior offense, endangering an infant and toddler in their home. This type of behavior made Calderon-Asevedo highly dangerous to both the public and to specific individuals, including the families of rival gang members, according to the court. The court acknowledged that Calderon-Asevedo had a loving, devoted family, but also stated its "great concern" that his criminal activities began when he was "very, very young," as a Latin Kings gang member, and that he had no verifiable employment history and a long criminal record including batteries and assaults. The court expressed its concern about protecting the public and also teaching Calderon-Asevedo respect for the law. The court then sentenced Calderon-Asevedo at the bottom of the advisory guidelines range.

On appeal Calderon-Asevedo renews his challenge to the district court's conclusion that his aggravated discharge of a firearm constituted a crime of violence. We find this to be a close question, and, because the district court's alternative holding presents an insurmountable obstacle for Calderon-Asevedo, we withhold ruling on the crime of

---

[2] Neither the government nor Guerrero-Salinas appealed in his case.

violence issue.[3]  We are satisfied that the alternative holding provides a solid basis for

---

[3]  Calderon-Asevedo presents a novel challenge; we have never considered whether the offense of which he was convicted meets the crime of violence definition given in § 2L1.2. We have observed that "crime of violence" is defined "more narrowly in § 2L1.2 than in other contexts because the definition does not encompass acts involving the use of force against property or acts that merely pose a risk of harm to another person." *United States v. Jaimes-Jaimes*, 406 F.3d 845, 849 (7th Cir. 2005).

Because aggravated discharge of a firearm is not among the offenses listed in § 2L1.2, Calderon-Asevedo asks us to consider whether it meets the "use, attempted use, or threatened use of physical force against the person of another" element requirement of that guideline, a question we have not previously answered. We have adopted the "charge offense approach to classifying prior offenses," meaning that we focus on the statutory definition of the crime, and not the specific facts of the offense. *See United States v. Franco-Fernandez*, 511 F.3d 768, 770 (7th Cir. 2008); *Jaimes-Jaimes*, 406 F.3d at 850. Calderon-Asevedo's indictment specified that he fired the gun *knowing* that the building he fired at was occupied, a fact that we do consider. *See Shepard v. United States*, 544 U.S. 13, 26 (2005); *United States v. Rice*, 520 F.3d 811, 820-821 (7th Cir. 2008).

We have extensively analyzed the definition of "crime of violence" in various contexts, but none of our other cases controls this case. One case considered whether the same Illinois offense as here constituted a crime of violence under the immigration statute. *See* 18 U.S.C. § 16; *Quezada-Luna v. Gonzalez*, 439 F.3d 403 (7th Cir. 2005). What *Quezada-Luna* did not clarify, however, was whether the physical force required in the Illinois statute involved the use of physical force against a person, as required by § 2L1.2, or only against property, as permitted by § 16(a). On another occasion we considered whether a firearms-discharge violation under a different subsection of § 5/24-1.2 was a crime of violence. *Rice*, 520 F.3d 811. But the reasoning suggests that Rice's offense met only the definition of § 4B1.2(a)(2) (requiring only "a serious potential risk of physical injury to another"). *Id*. at 821. We did not hold in *Rice* that aggravated discharge of a firearm has as an element the use of "physical force against the person of another," as required by § 2L1.2.

The case Calderon-Asevedo principally relies upon, *Jaimes-Jaimes*, similarly leaves the critical question in this case unanswered. In *Jaimes-Jaimes*, we considered whether the defendant's conviction in Wisconsin for "discharging a firearm into a vehicle or building" constituted a crime of violence under § 2L1.2. It did not because under Wisconsin law the state did not have to prove "that another person was present in the vehicle or building, or even anywhere near the targeted object." 406 F.3d at 850. In Calderon-Asevedo's case, the statute and, even more explicitly, the indictment specify that Calderon-Asevedo knew that a person *was* present during the shooting, so *Jaimes-Jaimes* is distinguishable.

Case law from other circuits bears on this question. In *United States v. Alfaro*, 408 F.3d 204 (5th Cir. 2005), the Fifth Circuit held that the Virginia offense of shooting into an occupied dwelling did not constitute a crime of violence because "a defendant could violate this statute merely by shooting a gun at a building that happens to be occupied without actually shooting, attempting to shoot, or threatening to shoot another person," and therefore the offense did not have as an element the use of force against another person. *Id.* at 209. The Ninth Circuit, interpreting a California law that is similar to Illinois's in this case, also concluded that the firearm-discharge offense does not necessarily constitute a crime of violence under § 2L1.2, noting that the "reckless act needs only be directed toward the dwelling or building," not at the life or safety of others. *United States v. Narvaez-Gomez*, 489 F.3d 970, 977 (9th Cir. 2007). We leave the resolution of this issue for another day; in this case, the district court's alternative

(continued...)

affirming this sentence.

The district court held that it would impose the 16-level increase as a matter of its sentencing discretion, even if the crime-of-violence categorization did not apply. Calderon-Asevedo argues that sentence is unreasonable because it amounts to a 91% upward variance. If the 16-level increase is replaced with the eight-level increase that Calderon-Asevedo thinks is warranted, his advisory sentencing range would be only 18 to 24 months' imprisonment, significantly lower than the 46-month sentence he received.

We review sentences for reasonableness, *see United States v. Tahzib*, 513 F.3d 692, 694-95 (7th Cir. 2008). Two recent Supreme Court cases on sentencing, *Kimbrough v. United States*, 128 S. Ct. 558 (2007), and *Gall v. United States*, 128 S. Ct. 586 (2007), together affirm that district courts have wide discretion in sentencing and that Courts of Appeals should not upset sentences that are supported by sound reasoning anchored to 18 U.S.C. § 3553(a). *Kimbrough* repeats that judges must consider the applicable guidelines range but only as one of an "array of factors." 128 S. Ct. at 564. *Gall* emphasizes the importance of the § 3553(a) factors. *Id.* at 596-97. *Gall* also cautioned against the kind of "proportional" criticism that Calderon-Asevedo advances, emphasizing that "the abuse-of-discretion standard of review applies to appellate review of all sentencing decisions—whether inside or outside the Guidelines range." *Id.* at 596.

The district court concluded that, apart from a crime-of-violence enhancement, Calderon-Asevedo's personal history warranted a 46-month sentence. Echoing § 3553(a) and following *United States v. Cunningham*, 429 F.3d 673 (7th Cir. 2005), the court discussed Calderon-Asevedo's "history and characteristics" and found that he had a "dangerous nature" with a history of gang involvement and physical attacks on others and virtually no employment record. *See* 18 U.S.C. § 3553(a)(1). The court also considered the need to protect the public from further unlawfulness and to deter Calderon-Asevedo. *See id.* § 3553(a)(2). This discussion indicates that the district court fulfilled its duties under *United States v. Booker*, 543 U.S. 220 (2005), and made a sentencing determination informed by the particular factors at issue in Calderon-Asevedo's case.

AFFIRMED.

---

[3](...continued)
holding is clearly dispositive.