In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2450

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JERMAINE CURTIS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 3:09-cr-50025-1—**Philip G. Reinhard**, *Judge.*

ARGUED APRIL 13, 2011—DECIDED JULY 13, 2011

Before POSNER, WOOD, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Appellant Jermaine Curtis was indicted on May 19, 2009, on two counts of distributing mixtures containing cocaine base in the form of crack cocaine in violation of 21 U.S.C. § 841(a)(1). Curtis agreed to plead guilty on February 22, 2010, to distributing 56.3 grams of a mixture containing cocaine base in the form of crack cocaine. According to the agreement's factual basis, Curtis sold a confidential in-

formant 56.3 grams of a mixture containing cocaine base in the form of crack cocaine on September 3, 2008, for $1,700. Curtis also acknowledged that he gave the confidential informant 3 grams of cocaine base in the form of crack cocaine on August 14, 2008, in exchange for $100.

The district court accepted the guilty plea and ordered the preparation of a presentence investigation report. The report placed Curtis's base offense level at 30 (an offense involving at least 50 grams but less than 150 grams of cocaine base, *see* U.S.S.G. § 2D1.1(c)(5) (2009)) and deducted three levels for acceptance of responsibility and timely notifying the government of his intent to plead guilty, *see* U.S.S.G. § 3E1.1. But the report also determined that Curtis was a career offender pursuant to U.S.S.G. § 4B1.1(a): (1) he was at least eighteen years old at the time of his instant offense; (2) his instant offense was a controlled substance offense; and (3) he had prior felony convictions for a crime of violence (aggravated discharge of a firearm in 2001) and a controlled substance offense (possession with intent to deliver a controlled substance in 2006). His career offender status raised his adjusted offense level to 34, his criminal history category to VI, and his advisory guidelines range to 262 to 327 months' imprisonment.

Curtis filed an objection to the presentence report and a motion for a downward variance. Curtis challenged his career offender status. He argued that his 2001 aggravated discharge of a firearm conviction did not qualify as a crime of violence and thus he was not a career offender. *See* U.S.S.G. § 4B1.1(a)(3). Curtis also argued that

the disparity between powder cocaine and crack cocaine was unfair, failed to advance justice, and did not support the purposes of 18 U.S.C. § 3553(a). Curtis maintained that his conviction only established that he was a "lower level distributor" and that the amounts involved did not establish that he was involved in a "large scale organization."

The district court disagreed. At Curtis's June 8, 2010, sentencing hearing, the court found that Curtis's aggravated discharge of a firearm conviction qualified as a crime of violence. The court also found that the length of Curtis's criminal history, namely his convictions involving the sale of controlled substances and violence and firearms and his probation and parole violations, weighed against a downward variance. The court considered and rejected Curtis's arguments on the crack and powder cocaine disparity and that Curtis was merely a "street level dealer." The court found that a sentence within the guidelines range was necessary because of Curtis's danger to society and the need to deter further criminal conduct. The court sentenced Curtis to 262 months' imprisonment and five years' supervised release. Curtis filed a timely appeal.

Curtis advances the same two arguments on appeal. First, he argues that the district court improperly applied the career offender enhancement pursuant to U.S.S.G. § 4B1.2(a). We apply de novo review to the "district court's career offender determination, as well as the underlying crime-of-violence determination." *United States v. Billups*, 536 F.3d 574, 578 (7th Cir. 2008) (citation omitted). A defendant qualifies as a career offender if:

(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Curtis concedes that the first two elements of the career offender enhancement apply to his circumstances. He also does not dispute that his 2006 conviction for possession with intent to deliver a controlled substance qualifies as a felony controlled substance offense. His argument is that his 2001 aggravated discharge of a firearm conviction does not qualify as a crime of violence.

A crime of violence for purposes of the career offender enhancement is defined as any federal or state law offense punishable by imprisonment for at least one year that:

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). To determine whether a given crime qualifies as a crime of violence we apply the "categorical approach." *United States v. Woods*, 576 F.3d 400, 403 (7th

Cir. 2009). We may only look "to the fact of conviction and the statutory definition of the prior offense," and will "not generally consider the particular facts disclosed by the record of conviction." *Id.* (quoting *James v. United States*, 550 U.S. 192, 202 (2007)) (internal quotations and citations omitted). The question is "whether the *elements of the offense* are of the type that would justify its inclusion . . . without inquiring into the specific conduct of this particular offender." *United States v. Taylor*, 630 F.3d 629, 633 (7th Cir. 2010) (quoting *James*, 550 U.S. at 202). When a statute describes more than one offense, and parts of the statute describe conduct that qualifies as a crime of violence and other conduct that does not (dubbed "divisible" statutes), we employ the "modified categorical approach." *Id.* Under this approach, we look at the conviction's judicial record to determine whether it qualifies as a crime of violence, but we will still not examine the particular facts of the conviction. *See id.* at 633 (citations omitted); *Woods*, 576 F.3d at 404 (citations omitted).

Curtis's conviction for aggravated discharge of a firearm pursuant to 720 Ill. Comp. Stat. 5/24-1.2(a) describes the following conduct:

> A person commits aggravated discharge of a firearm when he or she knowingly or intentionally:
>
> (1) Discharges a firearm at or into a building he or she knows or reasonably should know to be occupied and the firearm is discharged from a place or position outside that building;

(2) Discharges a firearm in the direction of another person or in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person; . . . .

The statute also describes other methods of committing the crime by "knowingly or intentionally" discharging a firearm in the direction of certain officials (such as firemen, teachers, or paramedics) or shooting a gun in the direction of a particular vehicle the shooter knows to be occupied by certain officials. *See id.* 5/24-1.2(a)(3)-(9). The parties agree that Curtis was convicted of subsection (a)(2).

Because there is more than one mode of violating subsection (a)(2), we must determine whether the statute is divisible. Actions that violate subsection (a)(2) require the elements of (1) knowingly or intentionally (2) discharging a firearm (3) in the direction of either a person or a vehicle the shooter knows or reasonably should know to be occupied. *See id.* Under the first U.S.S.G. § 4B1.2(a) "crime of violence" definition, the offense must have as an element the (1) use, attempted use, or threatened use of (2) physical force (3) against another person. Discharging a firearm is unquestionably the use, attempted use, or threatened use of physical force. *See Johnson v. United States*, 130 S. Ct. 1265, 1271 (2010) (defining "physical force" as "force capable of causing physical pain or injury to another person" for a similar definition in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i) (citing *Flores v. Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003))). When the firearm's discharge is in

the direction of another person or vehicle the shooter knows or reasonably should know to be occupied, which it must be under all modes of violating 720 Ill. Comp. Stat. 5/24-1.2(a)(2), that use, attempted use, or threatened use of physical force is "against the person of another." U.S.S.G. § 4B1.2(a)(1). Thus, the statute is not divisible because there are no methods of committing the actions in subsection (a)(2) without using, attempting to use, or threatening to use physical force against another person.[1] *See Taylor*, 630 F.3d at 633; *Woods*, 576 F.3d at 406.

Curtis argues that because the elements of aggravated discharge of a firearm do not require the firearm's discharge to result in injuring or striking a person, 720 Ill. Comp. Stat. 5/24-1.2(a) lacks the element of physical force required in U.S.S.G. § 4B1.2(a)(1). Curtis's argument ignores that § 4B1.2(a)(1) is not limited to the use of force; rather, it includes attempted and threatened uses of physical force. Discharging a firearm in the direction

---

[1] We noted in *United States v. Calderon-Asevedo*, 290 Fed. App'x. 923, 925 & n.3 (7th Cir. 2008) (unpublished order) that whether a 720 Ill. Comp. Stat. 5/24-1.2(a)(1) conviction was a crime of violence for U.S.S.G. § 2L1.2(b)(1)(A)(ii) (applying a 16-level enhancement for unlawfully entering or remaining in the country offenses) was a close question, but we withheld ruling because an alternative holding barred the challenge regardless. The § 2L1.2 application notes include a "crime of violence" definition identical to § 4B1.2(a)(1). Because Curtis agrees that his conviction was for subsection (a)(2) of 720 Ill. Comp. Stat. 5/24-1.2, we once again postpone what we described in *Calderon-Asevedo* as a "novel challenge."

of a person or a vehicle containing a person (regardless of what the shooter knows or reasonably should know) is unquestionably the use, attempted use, or threatened use of "physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).

Our precedent supports holding that aggravated discharge of a firearm in violation of 720 Ill. Comp. Stat. 5/24-1.2(a)(2) constitutes the use, attempted use, or threatened use of force against another person. In *United States v. Rice*, 520 F.3d 811, 821 (7th Cir. 2008), we held that a conviction for aggravated discharge of a firearm in violation of 720 Ill. Comp. Stat. 5/24-1.2(a)(2) was a U.S.S.G. § 4B1.2(a) crime of violence. In doing so, we relied on § 4B1.2(a)(2)'s residual clause in finding that firing a gun in the direction of another person or a vehicle the shooter "reasonably should know to be occupied carries . . . 'a serious potential risk of physical injury to another.'" *Rice*, 520 F.3d at 821 (quoting U.S.S.G. § 4B1.2(a)(2)). We emphasized that 720 Ill. Comp. Stat. 5/25-1.2(a)(2) "required proof that the defendant *know or should reasonably know* that another person occupied the vehicle." *Id.* (emphasis in original). *Rice* relied on our holding in *Quezada-Luna v. Gonzales*, 439 F.3d 403 (7th Cir. 2006) that a 720 Ill. Comp. Stat. 5/24-1.2(a)(1) conviction contains an element of the "use, attempted use, or threatened use of physical force against the person or property of another" for purposes of 18 U.S.C. § 16(a). Underlying both *Rice* and *Quezada-Luna* was the "common-sense notion that firing a gun is a use of physical force." *Rice*, 520 F.3d at 820; *Quezada-Luna*, 439 F.3d at 406.

We apply that same common-sense in holding that knowingly or intentionally discharging a firearm in the direction of a person or a vehicle the shooter "knows or reasonably should know to be occupied by a person," *see* 720 Ill. Comp. Stat. 5/24-1.2(a)(2), "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). Our holding in *United States v. Jaimes-Jaimes*, 406 F.3d 845, 849-50 (7th Cir. 2005), is instructive. In *Jaimes-Jaimes*, a Wisconsin statute contained the elements of intentionally discharging a firearm into a building or vehicle but only required that the shooter "should have realized that there might be a human being present." *Id.* at 849 (quoting *State v. Grady*, 499 N.W.2d 285, 287 (Wis. 1993)). All that was necessary in *Jaimes-Jaimes* for a conviction was that "the defendant should have realized that there *might* be a person present." *Id.* at 850. We distinguish *Jaimes-Jaimes* here for the same reason we distinguished it in *Rice*: the Wisconsin offense includes action "even where a person only should have realized that there *might* be a person inside the vehicle or building." 520 F.3d at 821. The Wisconsin law simply "did not require as an element the use, attempted use, or threatened use of physical force against another." *Id.* Our Illinois offense by contrast requires "proof that the defendant *know or should reasonably know* that another person occupied the vehicle." *Id.*

Consider the Fifth Circuit's *United States v. Alfaro* decision. 408 F.3d 204, 209 (5th Cir. 2005). There the court held that a conviction for shooting into an occupied dwelling did not have "as a necessary element, the use,

attempted use, or threatened use of force against an-
other" because a person could commit the act described
in the statute "merely by shooting a gun at a building
that happens to be occupied without actually shooting,
attempting to shoot, or threatening to shoot another
person." *Id.* By contrast, 720 Ill. Comp. Stat. 5/24-1.2(a)(2)
only mentions vehicles. Buildings are confined to sub-
section (a)(1). Vehicles as a class are generally quite
smaller than buildings. This difference in size in propor-
tion to the average size of a person causes us to draw a
conclusion opposite *Alfaro*: shooting in the direction of an
occupied vehicle has as a necessary element the use,
attempted use, or threatened use of force against a person
because one cannot commit that act without shooting,
attempting to shoot, or threatening to shoot at that
person in the vehicle. *See generally United States v.
Hernandez-Rodriguez*, 467 F.3d 492, 495 (5th Cir. 2006)
(holding that a statute requiring the discharge of a
firearm in the direction of a person is unlike *Alfaro*).

As the government properly conceded at oral argu-
ment, had Curtis fired in the direction of a car he should
*not* have reasonably known to be occupied, (for instance,
Curtis fired in the direction of a parked car awaiting
crushing at a junkyard), he could not be convicted of this
aggravated discharge of a firearm offense because that
action would be akin to criminal damage to property—not
aggravated discharge of a firearm. And that conduct
would not involve the use, attempted use, or threatened
use of physical force against another person for U.S.S.G.
§ 4B1.2(a)(1). By contrast, if the shooter ignored telltale
signs of the vehicle's occupancy, such as its presence at

a toll booth where the shooter "reasonably should know" the vehicle is occupied, the shooter's intentional or knowing discharge of a firearm in the direction of the vehicle would violate 720 Ill. Comp. Stat. 5/24-1.2(a)(2) and in turn, such conduct would constitute a § 4B1.2(a)(1) "crime of violence." Although the shooter may not have known of the vehicle's occupancy, the shooter still used, attempted to use, or threatened to use physical force against another person. *Cf. United States v. Tapia*, 610 F.3d 505, 513 (7th Cir. 2010) (holding that there was sufficient evidence that the defendant was alleged to have violated 720 Ill. Comp. Stat. 5/24-1.2(a)(1) because "the shooting occurred in the early hours of the morning when the home would likely be occupied, and in fact was"); *People v. Juarez*, 662 N.E.2d 567, 572 (Ill. App. Ct. 1996) (holding that a witness's testimony that he saw the "defendant point the gun and shoot in the direction of a moving vehicle, knowing that the vehicle was occupied" supported a 720 Ill. Comp. Stat. 5/24-1.2(a)(2) conviction).

Curtis argues that 720 Ill. Comp. Stat. 5/24-1.2(a)(2) violations fail to fit U.S.S.G. § 4B1.2(a)(2)'s residual clause, which encompasses offenses that otherwise involve "conduct that presents a serious potential risk of physical injury to another." He believes that intentionally or knowingly firing a gun in the direction of a person or a vehicle containing a person fails to present a serious potential risk of physical injury because such action lacks "a high degree of probability as to its outcome." We do not need to address this argument because Curtis's aggravated discharge of a firearm conviction

contains "an element the use, attempted use, or threatened use of physical force against the person of another" under U.S.S.G. § 4B1.2(a)(1). The district court did not err in finding that Curtis's discharge of a firearm conviction qualified as a crime of violence for purposes of the career offender enhancement.

Curtis next argues that the district court abused its discretion in refusing to apply a downward variance in light of the sentencing disparity between crack and powder cocaine and his claim that he was a low-level street distributor. We presume that a sentence within or below a properly calculated guideline range is reasonable. *United States v. Liddell*, 543 F.3d 877, 885 (7th Cir. 2008). We do not find that the district court abused its discretion in sentencing Curtis. The district court considered, and rejected, Curtis's arguments regarding the crack/powder disparity and that he was merely a low-level distributor because of his criminal history. Curtis asserted at oral argument that the district court erred in finding that Curtis had an extensive criminal record. We disagree. The district court relied on Curtis's conviction for distribution of a controlled substance and that he had been in "serious trouble" since the age of 12. The court also relied on Curtis's conviction for the above-discussed crime involving "violence and firearms" and his probation and parole violations. The court noted that Curtis committed this immediate offense within a year of being released from his state court conviction and that his return to "a lifestyle of committing criminal offenses" made him "a danger to society" and that deterrence was necessary

to prevent further criminal conduct. The district court justified its finding that Curtis had an extensive criminal record and did not abuse its discretion in finding that this record weighed against a downward variance despite the disparity and his alleged low-level distributor status. We will not disturb the district court's use of its discretion.

We AFFIRM the judgment of the district court.