**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued June 12, 2012
Decided August 24, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 11-3186

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 10 CR 832 |
| MIGUEL RIVERA-VALENZUELA, | |
| *Defendant-Appellant*. | Gary Feinerman, |
| | *Judge*. |

**O R D E R**

Miguel Rivera-Valenzuela ("Rivera") pleaded guilty to illegal reentry by a previously removed alien, 8 U.S.C. § 1326, and was sentenced to 39 months' imprisonment. When calculating Rivera's guidelines range, the district court imposed a 16-level increase after determining that his prior Illinois conviction for aggravated discharge of a firearm, *see* 720 Ill. Comp. Stat. 5/24-1.2(a)(2), is a "crime of violence," *see* U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A)(ii). Despite acknowledging at sentencing that the court was required to apply the increase under this court's decision in *United States v. Curtis*, 645 F.3d 937 (7th Cir. 2011), Rivera now challenges the adjustment on appeal. Because *Curtis* holds that § 5/24-1.2(a)(2) "has as an element the use, attempted use, or threatened use of physical force against the person of another," *id.* at 941, we affirm the sentence.

## Background

Rivera, a native and citizen of Mexico, illegally entered the United States with his family around 1996, when he was 12. In 2006 he was arrested after a passenger in a van he was driving fired a gun toward another moving vehicle. Rivera pleaded guilty to aggravated discharge of a firearm, 720 Ill. Comp. Stat. 5/24-1.2(a)(2), and was initially sentenced to 30 months of probation. But after Rivera violated the conditions of his probation, he was resentenced to four years' imprisonment. He was released on parole in 2009 and deported to Mexico.

Following his removal, Rivera returned to the United States and was arrested in 2010 for driving with a suspended driver's license. After immigration officers discovered Rivera in state jail, he was indicted on one count of illegal reentry. *See* 8 U.S.C. § 1326. Rivera pleaded guilty without a plea agreement, but later objected to several guidelines calculations in the presentence report. His principal objection, and the one relevant to this appeal, was to the recommendation that he receive a 16-level increase because his Illinois conviction is a "crime of violence" under § 2L1.2(b)(1)(A)(ii) of the Sentencing Guidelines Manual. The government responded and cited to our decision in *Curtis*.

The district court considered the 16-level increase at the sentencing hearing and determined that it applied to Rivera's guidelines range. Before reaching that conclusion, the court asked if Rivera disputed that the adjustment was "technically correct," or if he instead was arguing only that the resulting advisory guidelines range overstated his criminal history. When Rivera replied that he did contest the adjustment, the court asked what he had to say in light of our holding in *Curtis*. Rivera responded that "it does appear" that the district court's "hands are tied." The court then applied the adjustment after stating that, under *Curtis*, Rivera's conviction "categorically qualifies as a crime of violence." After calculating a guidelines imprisonment range of 46 to 57 months, the court sentenced Rivera to 39 months in part because it felt that the 16-level increase overstated his criminal history "to some degree."

## Analysis

The district court did not err in determining that Rivera's conviction under 720 Ill. Comp. Stat. 5/24-1.2(a)(2) is a "crime of violence" under § 2L1.2(b)(1)(A)(ii). In *Curtis* we held that § 5/24-1.2(a)(2) "has as an element the use, attempted use, or threatened use of physical force against the person of another." 645 F.3d at 941. Although that decision determined that a conviction under § 5/24-1.2(a)(2) is a crime of violence as defined in § 4B1.2 of the Sentencing Guidelines Manual, rather than in § 2L1.2, both guidelines define a crime of violence as any offense "that has as an element the use, attempted use, or

threatened use of physical force against the person of another." *See Curtis* at 940 n.1; *compare* U.S. Sentencing Guidelines Manual § 2L1.2 cmt. n.1(B)(iii) *with id.* § 4B1.2(a)(1). The full definitions in the two guidelines are not identical—for example, the definition in § 2L1.2 does not include the "residual clause" contained in § 4B1.2(a)(2), *see United States v. Jaimes-Jaimes*, 406 F.3d 845, 849 (7th Cir. 2005)—but the portion of the § 4B1.2 definition that underlies our holding in *Curtis* is repeated in § 2L1.2. Thus, as the district court recognized, we have already decided the issue presented in this appeal. *Cf. United States v. Templeton*, 543 F.3d 378, 380 (7th Cir. 2008) (giving same effect to definitions of crime of violence in § 4B1.2 and Armed Career Criminal Act because "[i]t would be inappropriate to treat identical texts differently just because of a different caption.").

In his brief Rivera provides a detailed account of the underlying facts of his Illinois conviction, presumably to persuade us that—although he pleaded guilty—his conduct did not satisfy the statutory elements of aggravated discharge of a firearm. But these facts are exactly the sort of information we may not consider when determining whether a prior conviction is for a crime of violence; under the "categorical approach" that applies to that analysis, we may look only to the fact of conviction and the statutory definition of the prior offense. *See United States v. Taylor*, 630 F.3d 629, 632–33 (7th Cir. 2010); *United States v. Dismuke*, 593 F.3d 582, 589 (7th Cir. 2010); *United States v. Woods*, 576 F.3d 400, 403 (7th Cir. 2009). Although we may examine certain documents when the statute of conviction describes multiple modes of commission and some modes constitute crimes of violence while others do not—meaning the statute is "divisible"—the materials may be used only to determine which crime the defendant committed, not how he committed the crime. *See, e.g., Taylor*, 630 F.3d at 633. And in *Curtis*, we determined that § 5/24-1.2(a)(2) is not divisible because "there are no methods of committing the actions in [§ 5/24-1.2(a)(2)] without using, attempting to use, or threatening to use physical force against another person." *Curtis*, 645 F.3d at 940. That conclusion ends the analysis, and bars us from reviewing the record of Rivera's Illinois conviction.[1] *See Woods*, 576 F.3d at 411 (declining to review additional materials in record because statute of conviction was not divisible).

---

[1] In *United States v. Johnson*, 680 F.3d 966, 983–84 (7th Cir. 2012), the defendant asked us to revisit *Curtis*' holding that § 5/24-1.2(a)(2) is not divisible because we have held that § 4B1.1 does not apply to crimes with a *mens rea* of negligence or recklessness, and § 5/24-1.2(a)(2) can be violated when a shooter "reasonably should know" that the vehicle he has fired at is occupied by a person. We declined the defendant's request because his indictment alleged that he had *knowingly* discharged a firearm at a vehicle he *knew* to be occupied, so his conviction was for a crime of violence even if we applied the "modified categorical approach" to § 5/24-1.2(a)(2) instead of the categorical approach. *Johnson*, 680 F.3d at 984. Here, Rivera's indictment likewise alleged that he and a codefendant violated § 5/24-1.2(a)(2) by "knowingly" discharging a firearm toward a vehicle they "knew" to be occupied, so we again have no occasion to revisit *Curtis*' holding that the statute is not divisible.

Rivera also suggests that he could have been culpable for aggravated discharge of a firearm only under Illinois' accountability statute, *see* 720 Ill. Comp. Stat. 5/5-2, because he was not the one who fired the gun. Rivera argues that this should change our "crime of violence" analysis because Illinois' accountability statute allows a defendant to be convicted as an accessory to a crime without proof that he had the mental state that would be necessary to convict the principal: as Rivera puts it, "merely driving the vehicle where a passenger shoots at another vehicle, without any further showing, such as whether the defendant knew the passenger had a gun or not, is enough to satisfy" the statute. But in Illinois, a defendant cannot be legally accountable for the criminal conduct of another unless he intends for the crime to be committed and has the same mental state required to prove the predicate offense. *See* 720 Ill. Comp. Stat. 5/5-2; *People v. Shaw*, 713 N.E.2d 1161, 1173 (Ill. 1998); *People v. Stanciel*, 606 N.E.2d 1201, 1210 (Ill. 1992). Thus, there is nothing in Illinois' accountability statute that alters our categorical approach to determining whether an Illinois conviction is for a crime of violence.

**AFFIRMED**.