In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 21-1622

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ARTHUR LEE ROBINSON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:17-cr-30041-SMY-1 — **Staci M. Yandle**, *Judge.*

_____

ARGUED DECEMBER 6, 2021 — DECIDED MARCH 24, 2022

_____

Before RIPPLE, WOOD, and KIRSCH, *Circuit Judges.*

WOOD, *Circuit Judge.* Arthur Robinson pleaded guilty, without the benefit of a plea agreement, to one count of being a felon in possession of a firearm. See 18 U.S.C. § 922(g)(1). Based largely on his willingness to admit his guilt, the court at first granted Robinson an acceptance-of-responsibility reduction to his offense level for sentencing purposes. See U.S.S.G. § 3E1.1(a). But after Robinson argued at his sentencing hearing that he should not be classified as an armed career

criminal pursuant to 18 U.S.C. § 924(e), the district court re-
voked the acceptance reduction. It then found that Robinson
was an armed career criminal and so was subject to a manda-
tory minimum sentence of 180 months. The court sentenced
Robinson just above that line, to 188 months.

Robinson appealed the loss of the acceptance-of-
responsibility reduction (but not the application of the
mandatory minimum sentence). We agreed with him, vacated
his sentence, and remanded for resentencing with the offense-
level reduction restored. *United States v. Robinson*, 942 F.3d 767
(7th Cir. 2019) (*Robinson I*). On remand, the district court
sentenced Robinson to the 180-month statutory minimum.
Robinson again appealed. While that second appeal was
pending, the Supreme Court decided *Borden v. United States*,
141 S. Ct. 1817 (2021). Robinson now argues that after *Borden*
he no longer qualifies for the armed-career-criminal
mandatory minimum, and so his sentence should again be
vacated. This time, we find no merit in his position, and so we
affirm.

**I**

Because the substance of Robinson's appeal largely turns
on his lengthy criminal history, we begin there. We draw the
relevant facts from the Presentence Investigation Report
(PSR). Robinson's criminal career began in 1991, when, at the
age of 20, he pleaded guilty to unlawful delivery of a con-
trolled substance. A year later, in March 1992, he pleaded
guilty to aggravated discharge of a firearm and to possession
of a weapon by a felon. In January 1993, he was convicted of
various cocaine-distribution offenses and of another charge
for unlawful possession of a firearm. His March 1992 and Jan-
uary 1993 convictions landed him in prison from 1993 to June

2000. In 2002, Robinson pleaded guilty to two more cocaine-distribution charges; that conduct led to both additional convictions and the revocation of his supervised release from the January 1993 sentence. He remained in prison until December 2013, when he was again granted supervised release. That period of supervision ended in February 2016.

The conduct underlying Robinson's March 1992 guilty plea to aggravated discharge of a firearm is relevant to the current appeal. That conviction came about, as the PSR put it, after Robinson "shot a handgun at least twice, at a van operated by undercover police officers, who were attempting to purchase drugs from [him]." At the time, the relevant Illinois criminal statute provided that "[a] person commits aggravated discharge of a firearm when he knowingly … [d]ischarges a firearm in the direction of another person or in the direction of a vehicle he knows to be occupied." Ill. Rev. Stat. 1991, ch. 38, par. 24-1.2(a)(2).[1]

Fast forward to September 2016. Early one morning, a police officer noticed an improperly parked vehicle on the street. The officer approached and observed Robinson asleep inside with a Glock 9mm handgun in his lap. The Glock had an extended 31-round magazine and (the officer later learned) had been reported stolen in 2002. Upon being awakened, Robinson volunteered that he was a convicted felon who had served 15 years in prison. Naturally he was arrested at that point. The next day, during an investigatory interview, Robinson

---

[1] Illinois switched to a new statutory compilation scheme effective January 1, 1993. Criminal statutes moved from chapter 38 to chapter 720, and the section numbering system also changed significantly. This opinion cites the older statutory compilation when discussing the state of the law prior to 1993.

explained that a man whom he claimed to know only as "Cory" had left the gun in the car after Robinson gave him a lift from a club. Robinson said that he had intended to discard the gun but had been intoxicated and had fallen asleep before he remembered to do so.

As we noted at the outset, Robinson pleaded guilty without a plea agreement to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He raised two arguments at sentencing. The first concerned his eligibility for an offense-level discount for acceptance of responsibility. That issue was ultimately resolved in his favor in *Robinson I*. The second argument related to his status as an armed career criminal for purposes of 18 U.S.C. § 924(e)(1). A person is subject to that statute if he "has three previous convictions … for a violent felony or a serious drug offense, or both, committed on occasions different from one another." *Id.* The Armed Career Criminal Act (the Act) defines a "violent felony" as one having "as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B). Section 924(e)(1) provides that armed career criminals convicted of violating section 922(g) "shall be … imprisoned not less than fifteen years[.]"

In *Robinson I*, we commented that Robinson did not contest the court's finding that he was an armed career criminal at that time. 942 F.3d at 772. But at the original sentencing proceeding, he did generally object to the PSR's classification of his 1992 aggravated-discharge conviction as a predicate violent felony. (All agree that Robinson has two other qualifying predicate convictions; the classification of the aggravated-discharge conviction thus is determinative of his status.) The district court overruled the objection but there is

some ambiguity as to why. On the relevant form, the district court initialed both the box for "Court adopts probation officer's position" (*i.e.*, that the conviction in question was a qualifying "crime of violence") and the box for "Other: moot as withdrawn." In either case, there is no question that Robinson did not litigate the issue further.

In March 2021, on remand from *Robinson I*, the district court sentenced Robinson to the statutory minimum of 180 months (15 years). (By this time, Judge Yandle had taken over the case from Judge Herndon, who had retired.) In so doing, the district court criticized the mandatory minimum sentence and suggested that it was likely "greater than necessary." But the court indicated that its hands were tied by the Act. Robinson filed a timely notice of appeal. In June 2021, before any briefs were filed in the second appeal, the Supreme Court issued its opinion in *Borden v. United States*, 141 S. Ct. 1817 (2021). *Borden* addressed the meaning of "use … of physical force against the person of another" in section 924(e)(2)(B) of the Act.

## II

In this appeal, Robinson contends that crimes akin to his Illinois aggravated-discharge offense may no longer serve as predicates for section 924(e), because of the Supreme Court's ruling in *Borden*. It was thus error, he reasons, to classify him as an armed career criminal at sentencing. The government counters that any such argument has long since been waived; that our remand in *Robinson I* was confined to the acceptance issue and did not permit Robinson to re-open other arguments, thus making his armed-career-criminal status the law of the case; and that, regardless, Robinson misreads *Borden*.

Normally, we review *de novo* the question whether a district court correctly enhanced a sentence under the Act, *United States v. Foster*, 652 F.3d 776, 792 (7th Cir. 2011), except insofar as the alleged error implicates a factual finding, in which case we review for clear error, *id.* But this appeal presents a prior question: whether the mandate rule and law-of-the-case doctrine preclude our consideration of Robinson's arguments. We thus begin there.

## A

"The mandate rule requires a lower court to adhere to the commands of a higher court on remand." *United States v. Polland*, 56 F.3d 776, 777 (7th Cir. 1995). The law of the case doctrine performs a related function. It "is a corollary to the mandate rule and prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court … ." *Id.* at 778. But this bar to reconsideration is not absolute. The appellate court has "some flexibility … to revisit an issue if an intervening change in the law, or some other special circumstance, warrants" doing so. *United States v. Thomas*, 11 F.3d 732, 736 (7th Cir. 1993).

Our decision in Robinson's first appeal did not address the question whether his 1992 aggravated-discharge conviction was a predicate under the Act's elements clause. That means, Robinson contends, that this issue was neither expressly nor impliedly decided in *Robinson I* and it is properly before us now. Moreover, he continues, even if we did rule on it earlier, he sees *Borden* as just the sort of "intervening change in the law" that *Thomas* had in mind. We do not need to choose between these alternatives. One way or the other the question is whether the Supreme Court's *Borden* decision compelled a

change in the law of this circuit. We therefore turn immediately to that issue.

                                          B

The Act's "elements clause" defines a violent felony as one that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). In *United States v. Curtis*, 645 F.3d 937, 940 (7th Cir. 2011), we had before us the nearly identical definition of "crime of violence" found in section 4B1.1(a) of the Sentencing Guidelines. We asked whether the elements of a later version of the Illinois aggravated-discharge statute than the one at issue in Robinson's case fit that definition. *Id.* The amended statute read as follows (with changes from the 1991 version underlined):

> A person commits aggravated discharge of a firearm when he or she knowingly or intentionally:
>
> (1) Discharges a firearm at or into a building he or she knows or reasonably should know to be occupied and the firearm is discharged from a place or position outside that building; [or]
>
> (2) Discharges a firearm in the direction of another person or in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person[.]
>
> 720 ILCS 5/24-1.2(a) (2011).

The defendant in *Curtis* had argued that "because the elements of aggravated discharge of a firearm do not require the

firearm's discharge to result in *injuring* or *striking* a person" the crime lacked the requisite element of physical force. 645 F.3d at 941 (emphasis added). We were unpersuaded that the statute had a separate "injuring-or-striking" requirement; this reading seemed inconsistent with the fact that the statute covered both "attempted and threatened uses." *Id.* In that connection, we held that "there are no methods of committing the actions in subsection (a)(2) without using, attempting to use, or threatening to use physical force against another person." *Id.* at 940.

To distinguish that holding in his first appeal, Robinson would have needed to convince us that the phrase "against the person of another" means two very different things in the guidelines and the Act. That would have been an uphill battle, given the many cases that have found the guidelines and the Act to be identical on this point. See, *e.g.*, *United States v. Jennings*, 860 F.3d 450, 453 (7th Cir. 2017); *United States v. Evans*, 924 F.3d 21, 29 n.4 (2d Cir. 2019). Accordingly, Robinson has satisfied the first half of his burden: the law in this circuit on the question whether this Illinois law required the use of force was settled before *Borden* came along.

In *Borden*, the Supreme Court had to decide "whether a criminal offense can count as a 'violent felony' [under the elements clause of the Act] if it requires only a *mens rea* of recklessness." 141 S. Ct. at 1821. A fractured majority held that reckless offenses do not so qualify. *Id.* Four of the justices reached that result without qualification. The plurality explained that reckless offenses "do not require, as the Act does, the active employment of force against another person." *Id.* at 1834. They distinguished "recklessness" from "purpose" and "knowledge," employing the standard definitions: "A person

acts purposefully when he consciously desires a particular result" and "acts knowingly when he is aware that a result is practically certain to follow from his conduct, whatever his affirmative desire." *Id.* at 1823 (cleaned up). In contrast, a person acts recklessly "when he consciously disregards a substantial and unjustifiable risk attached to his conduct, in gross deviation from accepted standards." *Id.* at 1824 (cleaned up).

Justice Thomas cast the deciding vote. While he agreed with the plurality that reckless offenses do not fit the elements-clause definition found in section (e)(2)(B)(i), he would have found that they do fit within the so-called residual clause found in section (e)(2)(B)(ii) of the Act: "… or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* at 1834 (Thomas, J., concurring in the judgment). But, acknowledging the *stare decisis* effect of *Johnson v. United States*, 576 U.S. 591, 597 (2015), which held the residual clause to be void for vagueness, Justice Thomas concurred in the judgment. *Id.* at 1836–37.

Robinson contends that *Borden* changed the significance, under the Act, of his 1992 Illinois aggravated-discharge conviction, but we do not see how it could have done so. *Borden*, as we just said, was about *mens rea*. Yet there is no *mens rea* issue here. The Illinois statute in question had a *mens rea* of knowing in 1991, and it still does today. *Borden* is thus irrelevant. A quick look at the statute under which Robinson was charged drives the point home:

> A person commits aggravated discharge of a firearm when he *knowingly*:
>
>> (1) Discharges a firearm at or into a building he *knows* to be occupied and the firearm

> is discharged from a place or position outside that building; or
>
> (2) Discharges a firearm in the direction of another person or in the direction of a vehicle he *knows* to be occupied.

Ill. Rev. Stat. 1991, ch. 38, Ill. par. 24-1.2(a)(1)-(2) (emphasis added).

This provision is replete with words indicating that it covers only knowing actions: the *knowing* discharge of a firearm (1) into a building the person *knows* to be occupied, (2) in the direction of another person, or (3) or in the direction of a vehicle the person *knows* to be occupied. This calls for knowledge of the target, not just knowledge that one is pulling the trigger. *Cf. Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019) ("[W]e start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct.") (internal quotation marks omitted). And as for the prohibition against shooting in the direction of another person, a reading in which this provision did *not* require the shooter to know there is a person in the direction of the discharge would defy grammatical logic.

The Illinois Supreme Court has confirmed that the *mens rea* for aggravated discharge is "knowing" for both the discharge element and the target element. In *People v. Fornear*, 176 Ill. 2d 523, 525 (1997), the defendant had been convicted by a jury of both aggravated discharge of a firearm and of reckless conduct after he shot his fiancée. The intermediate appellate court, in affirming both convictions, had reasoned that

"aggravated discharge of a firearm required only that the jury find that defendant knowingly or intentionally performed the act of firing the pistol in the direction of the victim." *Id.* at 531 (quoting 283 Ill. App. 3d 171, 179 (1996)). It saw no tension between that conviction and the reckless-conduct conviction: "Assuming the jurors also found that [the] defendant intentionally fired the weapon with a conscious disregard for whether his actions would endanger or injure the victim, they could have concluded properly that [the] defendant was guilty of both aggravated discharge of a firearm and reckless conduct." *Id.* But the Illinois Supreme Court rejected that reasoning. It explained that "recklessness and knowledge are mutually inconsistent culpable mental states," *id.* at 531, and that "aggravated discharge of a firearm depended on a finding that defendant knowingly discharged a firearm in the direction of another person," *id.* at 532. In short, *Fornear* establishes that Illinois aggravated discharge requires a *mens rea* higher than the recklessness considered in *Borden*.

Further confirmation is found in the longstanding distinction in Illinois law between reckless discharge and aggravated discharge. Illinois law defines "the offense of reckless discharge of a firearm as 'discharging a firearm in a reckless manner which endangers the bodily safety of an individual.'" *People v. Giraud*, 2012 IL 113116 ¶ 19 (quoting 720 ILCS 5/24-1.5(a)). The Illinois Supreme Court has concluded that "reckless discharge of a firearm does not require 'the intentional firing of a weapon knowingly and directly at someone[,]'" because "the act of intentionally firing at a particular individual would be the offense of aggravated discharge of a firearm." *Id.* (quoting *People v. Collins*, 214 Ill. 2d 206, 215 (2005)).

Text, case law, and statutory context all point to the same conclusion: The *mens rea* for Illinois's aggravated-discharge offense is knowledge, not recklessness. *Borden*, it follows, is irrelevant to Robinson's status, because his predicate violent offense was not a reckless crime.

***

Because Robinson has not identified "an intervening change in the law" that bears on his sentence, *Thomas*, 11 F.3d at 736, we have no reason to disregard the mandate rule. Accordingly, we hold that Robinson's status under the act was settled at his initial sentencing proceeding and remains settled after *Borden*.

C

Before we conclude, a brief comment on waiver is in order. The government contends that everything we have just said is unnecessary because Robinson "waived" the issue of his armed-career-criminal status when he elected not to raise it in his first appeal. We realize that we have written that "any issue that could have been but was not raised on appeal is waived and thus not remanded." *United States v. Husband*, 312 F.3d 247, 250 (7th Cir. 2002). But that statement, in context, did not purport to sweep away the well-recognized distinction between waiver and forfeiture. See *United States v. Olano*, 507 U.S. 725, 733 (1993); *United States v. Flores*, 929 F.3d 443, 447 (7th Cir. 2019); *United States v. Hyatt*, No. 21-1212, at 5 (7th Cir. Mar. 14, 2022). Waiver is the intentional relinquishment of a point, while forfeiture results from a lack of action. The latter is a better description of Robinson's case. At best, he forfeited this issue, thereby entitling us to reach it under the plain-error standard of review. But he would stumble immediately on the

first point—was there an error at all? See *Olano*, 507 U.S. at 733–34. We have concluded that the answer to that question is no. That is the end of this line for Robinson. We thus have no need to consider how aggressively his lawyer should have challenged existing circuit law on the first appeal.

### III

We AFFIRM the judgment of the district court.