[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15815
_____

D.C. Docket No. 6:12-cr-00175-JA-TBS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIO ESTRELLA,
a.k.a. Arturo Hernandez,

Defendant-Appellant.
_____

On Appeal from the United States District Court
for the Middle District of Florida
_____

(July 10, 2014)

Before MARTIN and HILL, Circuit Judges, and FULLER,[*] District Judge.

MARTIN, Circuit Judge:

---

[*] Honorable Mark E. Fuller, United States District Judge for the Middle District of Alabama, sitting by designation.

Mario Estrella, a federal prisoner convicted of illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(1), appeals from the District Court's application of a 16-level guideline enhancement pursuant to United States Sentencing Guidelines (USSG) § 2L1.2(b)(1)(A)(ii).  We must decide whether Mr. Estrella's conviction under Fla. Stat. § 790.19 for wantonly or maliciously throwing, hurling, or projecting a missile, stone, or other hard substance at an occupied vehicle constitutes a crime of violence for purposes of the USSG § 2L1.2 enhancement. After careful review, and with the benefit of oral argument, we hold that it is not.

## I. FACTS AND PROCEDURAL BACKGROUND

Mr. Estrella's present troubles arise from his decision to illegally re-enter the United States after being deported in December 2009.  When law enforcement discovered his admittedly unlawful presence in the United States in May 2012, Mr. Estrella was charged with, and pleaded guilty to, illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(1).

The severity of Mr. Estrella's punishment, however, derives from a sentence enhancement based on a transgression that took place years before he pleaded guilty to illegal reentry.  On July 7, 2004, the State of Florida alleged that Mr. Estrella "did, in violation of Florida Statute 790.19, wantonly or maliciously throw, hurl or project a missile, stone or other hard substance, which would produce death or great bodily harm, at a vehicle being used or occupied by a person."  He

2

apparently pleaded guilty to the offense as charged on November 17, 2004, although the record of conviction before the sentencing court and before this Court on appeal includes neither the judgment of conviction nor the transcript of any plea colloquy.

The fact of Mr. Estrella's conviction under Fla. Stat. § 790.19, as well as a description of his alleged conduct, was included in the Presentence Investigation Report (PSR) prepared to assist the District Court with Mr. Estrella's sentencing for his illegal reentry conviction. The PSR concluded that the § 790.19 conviction qualified as a crime of violence under USSG § 2L1.2(b)(1)(A)(ii), and recommended that the District Court impose the corresponding 16-level enhancement.

Mr. Estrella objected to the proposed enhancement. He argued that his violation of § 790.19 is not a crime of violence within the meaning of USSG § 2L1.2(b)(1)(A)(ii) because the statute does not have an element requiring the use, attempted use, or threatened use of physical force against the person of another. He argued that the statute is not on its face a USSG § 2L1.2 crime of violence because its elements would permit conviction even if a defendant directed physical force against property rather than a person. What is more, he argued, the record of conviction before the District Court did not establish whether Mr. Estrella did, in fact, direct force against a person.

3

The District Court overruled Mr. Estrella's objection and applied the 16-level guideline enhancement, resulting in a total offense level of 21 after applicable downward adjustments.  An offense level of 21 corresponded to a guideline range of 46 to 57 months given Mr. Estrella's criminal history category.  Ultimately, the District Court showed mercy on Mr. Estrella and sentenced him to 26 months.  But had the District Court sustained Mr. Estrella's objection, his offense level would have fallen to 10,[1] corresponding to a recommended guideline range of just 10 to 16 months.

## II. LEGAL FRAMEWORK

"We review <u>de novo</u> whether a defendant's prior conviction qualifies as a 'crime of violence' under the Sentencing Guidelines."  <u>United States v. Palomino Garcia</u>, 606 F.3d 1317, 1326 (11th Cir. 2010) (some quotation marks omitted).  A conviction is considered a crime of violence for purposes of USSG § 2L1.2 if it falls under a list of enumerated offenses or meets an elements-based definition. USSG § 2L1.2, comment. (n.1(B)(iii)).  We are concerned here only with the elements-based definition, which permits application of the enhancement only if the prior conviction upon which the enhancement is based "has as an element the use, attempted use, or threatened use of physical force against the person of

---

[1] Absent the 16-level crime of violence enhancement, Mr. Estrella would not qualify for the additional one point reduction for acceptance of responsibility under USSG § 3E1.1(b) that was applied when calculating his original guideline range.

4

another." Id.  To decide whether a conviction qualifies as a crime of violence under this definition, courts apply what has become known as the "categorical approach," and depending on the statutory structure of the crime of conviction may apply a variant of the categorical approach known as the "modified categorical approach."  See Descamps v. United States, 570 U.S. ___, 133 S. Ct. 2276, 2281 (2013).

## A. CATEGORICAL APPROACH

The first step in determining whether a conviction qualifies as a crime of violence under USSG § 2L1.2 is to analyze the statute of conviction under the categorical approach set forth in Taylor v. United States, 495 U.S. 575, 110 S. Ct. 2143 (1990).  See, e.g., Palomino Garcia, 606 F.3d at 1336–37.  Under this approach, we "look no further than the statute and judgment of conviction," id. at 1336, and "compare only the elements of the statute forming the basis of the defendant's conviction" and the generic definition of a crime of violence.  United States v. Howard, 742 F.3d 1334, 1345 (11th Cir. 2014) (quotation marks omitted). This analysis permits application of the USSG § 2L1.2 crime of violence enhancement only if the statute on its face "requires the government to establish, beyond a reasonable doubt and without exception," an element involving the use, attempted use, or threatened use of physical force against a person for every charge brought under the statute.  Donawa v. U.S. Attorney Gen., 735 F.3d 1275, 1281

(11th Cir. 2013); see also Descamps, 133 S. Ct. at 2285–86 (holding that conviction under a California burglary statute did not qualify as a predicate offense under the Armed Career Criminal Act because the State, to get a conviction, "need not prove" an element of the generic federal offense).

Whether, in fact, the person suffering under this particular conviction actually used, attempted to use, or threatened to use physical force against a person is "quite irrelevant." Donawa, 735 F.3d at 1280 (quoting Moncrieffe v. Holder, ___ U.S. ___, 133 S. Ct. 1678, 1684 (2013)) (quotation mark omitted). Instead, the categorical approach focuses on whether in every case a conviction under the statute "necessarily involves" proof of the element. Id.; see also Howard, 742 F.3d at 1345 ("If the statute criminalizes several acts, we must assume that the conviction rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed by the generic federal offense. A conviction will qualify as an ACCA predicate under the categorical approach only if the statute's elements are the same as, or narrower than, those of the generic offense." (citation omitted) (quotation marks omitted)). Even if the government could prove an element if it were called upon to do so, this does not affect the answer to the question courts must ask when applying the categorical approach—whether the crime of conviction "has" the element, as USSG § 2L1.2

6

requires before the crime of violence enhancement is applied.  See USSG § 2L1.2, comment. (n.1(B)(iii)).

## B.  MODIFIED CATEGORICAL APPROACH

In most cases, the categorical approach should be the beginning and end of the analysis.  But in a "narrow range of cases"—where the elements do not necessarily meet the generic crime of violence definition—it is appropriate for courts to apply the modified categorical approach.  Descamps, 133 S. Ct. at 2281, 2287; see also Howard, 742 F.3d at 1345 ("The modified categorical approach does not come into the picture when a statute criminalizes only categorically generic crimes; it is not needed.").  In applying the modified categorical analysis, courts "look to the fact of conviction and the statutory definition of the prior offense, as well as any charging paper and jury instructions to ascertain whether, as a formal matter, committing the offense required committing a 'crime of violence.'"  United States v. Rosales-Bruno, 676 F.3d 1017, 1020 (11th Cir. 2012) (some quotation marks omitted); see also Shepard v. United States, 544 U.S. 13, 26, 125 S. Ct. 1254, 1263 (2005) (defining the scope of judicial records that can be relied upon by courts applying the modified categorical approach).

But before engaging the modified categorical inquiry, courts must decide whether they are confronted with a prior conviction that warrants application of the modified analysis.  The Supreme Court has only approved using the modified

categorical approach "when a prior conviction is for violating a so-called 'divisible statute.'"  Descamps, 133 S. Ct. at 2281, 2286.  A divisible statute is one that "sets out one or more elements of the offense in the alternative."  Id. at 2281; see also Howard, 742 F.3d at 1345–46 ("Descamps tells us that a statute is divisible if it 'sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile.'"  (quoting Descamps, 133 S. Ct. at 2281)).  In a "typical case" brought under such a statute, "the prosecutor charges one of those two alternatives, and the judge instructs the jury accordingly."  Descamps, 133 S. Ct. at 2284.  A statutory scheme that is divisible, the Supreme Court elaborated, is one in which "[a] prosecutor charging a violation . . . must generally select the relevant elements from its list of alternatives.  And the jury, as instructions in the case will make clear, must then find that element, unanimously and beyond a reasonable doubt."  Id. at 2289 (footnote omitted) (citation omitted).

By contrast, "[n]one of that is true of an overbroad, indivisible statute."  Id. at 2290.  "A sentencing court, to be sure, can hypothetically reconceive [an indivisible] statute in divisible terms."  Id.  But if the statutory scheme is not such that it would typically require the jury to agree to convict on the basis of one alternative as opposed to the other, then the statute is not divisible in the sense required to justify invocation of the modified categorical approach.  Id.  This is

true "even if in many cases[] the jury could have readily reached consensus" on a fact that would satisfy the crime of violence definition. Id. If the jury is not required to decide which of the statute's alternative bases for guilt applies to a given defendant, then "a later sentencing court cannot supply that missing judgment." Id.

The Supreme Court's effort to distinguish divisible and indivisible statutes makes clear that we should ask ourselves the following question when confronted with a statute that purports to list elements in the alternative: If a defendant charged with violating the statute went to trial, would the jurors typically be required to agree that their decision to convict is based on one of the alternative elements? If that is true, then the statute is divisible, and the sentencing court can turn to the modified categorical approach to determine which of the alternative elements formed the basis of the particular conviction underlying the proposed sentence enhancement. If not, then the statute is both overbroad and indivisible and cannot serve as a predicate offense for purposes of a sentence enhancement.

Determining whether a statute is divisible may be difficult sometimes. See id. at 2285 n.2. Still, "courts should usually be able to determine whether a statute is divisible by simply reading its text and asking if its elements or means are drafted in the alternative." Howard, 742 F.3d at 1346 (quotation marks omitted). In conducting this analysis in our Circuit, sentencing courts "are bound to follow

9

any state court decisions that define or interpret the statute's substantive elements because state law is what the state supreme court says it is." Id. at 1346 & n.5 (explaining the law of this Circuit, while noting that "Descamps left open the question whether sentencing courts deciding divisibility issues should be bound by state court decisions about the elements of a crime"). Barring guidance from the state courts interpreting the statute, courts should apply traditional tools of statutory interpretation to decide whether a statute sweeping broader than a generic offense is divisible and thus amenable to analysis under the modified categorical approach.

Once a court confirms that the statute of prior conviction is divisible, then— and only then—can it analyze the conviction under the modified categorical approach. Descamps, 133 S. Ct. at 2285; see also Donawa, 735 F.3d at 1280–81. This approach permits courts to examine not just the statute of conviction but also reliable materials in the record of conviction "to determine whether the prior conviction falls under a particular statutory phrase that qualifies it as a 'crime of violence.'"[2] Rosales-Bruno, 676 F.3d at 1020. "Where, as here, the prior

---

[2] Of course, as this Court recognized in Howard, application of the modified categorical approach may not be necessary even for a divisible statute if none of the alternative elements qualifies as a crime of violence. 742 F.3d at 1346. "If that is the case, even though the statute is divisible, the court can and should skip over any Shepard documents and simply declare that the prior conviction is not a predicate offense based on the statute itself." Id. The point here is that courts should feel free to pursue the most efficient means of deciding a particular case, id. at 1347, provided they adhere strictly to the several reminders federal courts have recently received

10

conviction stems from a guilty plea, the materials we review include the terms of the charging document, the terms of a plea agreement or transcript of colloquy . . . [or] some comparable judicial record of this information.  In that vein, we may also rely on facts contained in a presentence investigation report (PSR), so long as those facts are undisputed."  Id. (citation omitted) (quotation marks omitted).[3]

But, as the Supreme Court has recognized, treating the modified categorical approach as entirely untethered from the principles underlying the categorical approach is not appropriate.  See Descamps, 133 S. Ct. at 2285.  Rather, the modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime."  Id.  The purpose is to avoid "the sort of post hoc investigation into the facts of predicate offenses that we have long deemed undesirable."  Moncrieffe, 133 S. Ct. at 1690.  And here, that limitation also effectuates the Sentencing Commission's intent—USSG § 2L1.2's crime of violence definition explicitly calls for courts to focus on the elements of a prior conviction, not the facts of the prior conduct resulting in that conviction. This is evidence that the Commission did not "want[] to increase a sentence based on the facts of a prior offense," for if it had desired such an inquiry "it presumably would have said so."  Descamps, 133 S. Ct. at 2287.

from the Supreme Court that the focus is always on the elements of a prior conviction and never on the facts of the underlying conduct.

[3] Because it makes no difference in the outcome here, we assume that continued reliance on undisputed facts included in the PSR is appropriate after Descamps.

11

When we analyze a particular conviction under a divisible statute in an effort to determine which of the alternative elements formed the basis of the prior conviction, we must ask:  Which "version" of the divisible statute formed the basis of the conviction—that is, which of the alternative elements did the jury all agree to or the defendant necessarily admit?  See Descamps, 133 S. Ct. at 2284; Shepard, 544 U.S. at 25–26, 125 S. Ct. at 1262–63 (plurality opinion).  The goal is to determine "which statutory phrase was the basis for the conviction," Johnson, 559 U.S. at 144, 130 S. Ct. at 1273, to ensure that the defendant was "convicted, in the deliberate and considered way the Constitution guarantees," Descamps, 133 S. Ct. at 2290, of an offense meeting the USSG § 2L1.2 crime of violence definition. Whether the defendant's conduct is such that he "hypothetically could have been convicted" of a crime of violence is irrelevant, even when engaging the modified categorical inquiry.  Id. at 2288.  Such a "circumstance-specific review is just what the categorical approach precludes.  And as we have explained, we adopted the modified approach to help implement the categorical inquiry, not to undermine it." Id. at 2292–93.

This is all to say that a sentencing court applying the modified categorical approach may not "look beyond the elements to the evidence . . . to explore whether a person convicted of one crime could also have been convicted of another, more serious offense."  Id. at 2292.  The Supreme Court has clearly told

12

us, as well as the sentencing courts, that we must resist the urge, tempting though it may be, to apply an enhancement based on the conduct in which a defendant actually engaged.  Where the judge or jury made no finding of an element at the time a defendant was actually convicted of the earlier crime, it is decidedly not our role to step in and do it now.  Rather, the enhancement must be based only on the elements for which the defendant was convicted at the time.

## III. APPLICATION

With this legal backdrop in mind, we turn to Mr. Estrella's sentence.  The District Court's application of the crime of violence enhancement was proper only if Mr. Estrella's prior conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another."  USSG § 2L1.2, comment. (n.1(B)(iii)).  Mr. Estrella argues that his conviction (1) has no element requiring the use of "physical" force as defined in Johnson v. United States, 559 U.S. 133, 130 S. Ct. 1265 (2010) (the quantum-of-force requirement), and (2) has no element requiring that the force used, attempted, or threatened be directed against a person (the against-a-person requirement).

The District Court based the enhancement on Mr. Estrella's prior conviction under Fla. Stat. § 790.19, which provides:

> Whoever wantonly or maliciously, shoots at, within, or into, or throws any missile or hurls or projects a stone or other hard substance which would produce death or great bodily harm, at, within, or in any public or private building, occupied or unoccupied, or public or private bus

13

or any train, locomotive, railway car, caboose, cable railway car, street railway car, monorail car, or vehicle of any kind which is being used or occupied by any person, or any boat, vessel, ship, or barge lying in or plying the waters of this state, or aircraft flying through the airspace of this state shall be guilty of a felony of the second degree . . . .

The only two elements that might equate, either in isolation or when considered together, to an element requiring the use, attempted use, or threatened use of physical force against a person are (1) the element regarding the type of structure targeted or (2) the mens rea element. We analyze each of these elements in turn, but ultimately conclude that neither element, in isolation or in tandem, satisfies the against-a-person requirement. This conclusion settles the question now before us, and there is no need to consider whether the quantum-of-force requirement is met, because both aspects of the crime of violence definition must be met before the enhancement may be applied. It was therefore error for the District Court to enhance Mr. Estrella's sentence under USSG § 2L1.2(b)(1)(A)(ii).

### A. THE TYPE-OF-STRUCTURE-TARGETED ELEMENT

Applying the categorical approach first, we conclude that the element defining the type of structure targeted is not one that categorically means that there was physical violence used, attempted, or threatened against a person. Rather, it is an element that describes a range of conduct, some of which does not meet the against-a-person requirement. Cf. Donawa, 735 F.3d at 1280 ("The modified categorical approach applies when the state statute is 'divisible'—that is, when it

14

punishes some conduct that would satisfy the elements of a federal felony and some conduct that would not."). For example, the element can be satisfied if a defendant shoots into a building he knows is not occupied. This conduct clearly targets property and not a person. This example makes clear that the element covers a broader swath of conduct than the crime of violence definition, and therefore is not categorically an element satisfying the crime of violence definition.

Moving on to the next stage of the inquiry, we must decide whether the type-of-structure-targeted element is defined in such a way that it "effectively create[s] several different crimes." Donawa, 735 F.3d at 1281; see also Descamps, 133 S. Ct. at 2285. It clearly does. This element is satisfied if there is proof that the defendant targeted any of the following alternative structures: (1) a public or private building, occupied or unoccupied; (2) a public or private bus; (3) (i) a train being used or occupied by any person, (ii) a railway car being used or occupied by any person, (iii) a vehicle being used or occupied by any person, etc.; (4) a boat, vessel, ship, or barge lying in or plying the waters of this state; or (5) an aircraft flying through the air space of this state. See Fla. Stat. § 790.19. Based upon what Descamps teaches us, it is clear from the face of the statute that each of these different structures is a separate element. See Nijhawan v. Holder, 557 U.S. 29, 35, 129 S. Ct. 2294, 2299 (2009) ("A single Massachusetts statute section entitled 'Breaking and Entering at Night,' for example, criminalizes breaking into a

15

'building, ship, vessel or vehicle.' In such an instance, we have said, a court must determine whether an offender's prior conviction was for the violent, rather than the nonviolent, break-ins that this single five-word phrase describes (e.g., breaking into a building rather than into a vessel), by examining the indictment or information and jury instructions, or, if a guilty plea is at issue, by examining the plea agreement, plea colloquy or some comparable judicial record of the factual basis for the plea." (citations omitted) (quotation marks omitted)); Shepard, 544 U.S. at 17, 25–26, 125 S. Ct. at 1257, 1262–63 (considering a burglary statute criminalizing entry into buildings as well as "boats and cars," and authorizing application of the modified categorical approach to try to discern whether the conviction was for generic or non-generic burglary); Taylor, 495 U.S. at 602, 110 S. Ct. at 2160 (explaining that there is a "narrow range of cases" where a sentencing court may go beyond the mere fact of conviction, and hypothesizing a burglary statute "includ[ing] entry of an automobile as well as a building" as one case permitting deeper inquiry); see also Descamps, 133 S. Ct. at 2283–85 (discussing these cases).

Because the type-of-structure element is divisible, we invoke the modified categorical approach to determine whether Mr. Estrella's conviction under the element of targeting "a vehicle being used or occupied by a person" equates to an element meeting the against-a-person requirement. In answering this question, we

16

benefit from the analysis engaged by several of our sister Circuits in addressing whether an element requiring that force be directed at occupied property equates to an element requiring the use, attempted use, or threatened use of physical force against the occupant.[4]

First, the Fifth Circuit in United States v. Alfaro, 408 F.3d 204 (5th Cir. 2005), considered whether a prior conviction under a Virginia statute for shooting into an occupied dwelling constitutes a crime of violence for purposes of the USSG § 2L1.2 enhancement.  The Fifth Circuit held that the statute under which Mr. Alfaro was convicted does not have an element requiring the use, threatened use, or attempted use of force "against the person of another."  Id. at 209.  It held that the against-a-person requirement was not met because "a defendant could violate [the] statute merely by shooting a gun at a building that happens to be occupied without actually shooting, attempting to shoot, or threatening to shoot another person."  Id.; cf. United States v. Hernandez-Rodriguez, 467 F.3d 492, 495 (5th

---

[4] Florida has also considered whether a violation of Fla. Stat. § 790.19 meets the state's definition of a crime of violence.  Paul v. State, 129 So. 3d 1058 (Fla. 2013).  The Florida Supreme Court concluded that a conviction for throwing a deadly missile or shooting into an occupied vehicle under the statute "necessarily involves the use or threat of physical force or violence against an individual."  Id. at 1059.  We are mindful that state court opinions regarding the elements of a criminal conviction are binding on the federal courts in this Circuit.  See Howard, 742 F.3d at 1346.  However, the question we are answering here is whether those elements as defined by state law, including state court decisions, create a crime of violence for purposes of the federal sentence enhancement.  We are not bound by Paul in answering this question.  This is because whether conduct qualifies for a sentence enhancement under federal law "is a question of federal law, not state law.  And in answering that question we are not bound by a state court's interpretation of a similar—or even identical—state statute."  Johnson, 559 U.S. at 138, 130 S. Ct. at 1269.

Cir. 2006) (finding the against-a-person requirement satisfied because an element of the statute of conviction required that a firearm be discharged "at or in the direction of one or more individuals").[5]

The next Circuit to address a variation of the question now before us was the Tenth Circuit in United States v. Ford, 613 F.3d 1263 (10th Cir. 2010). In Ford, that Court considered whether a Kansas conviction for criminal discharge of a firearm at an occupied building or vehicle is a violent felony under the Armed Career Criminal Act. Id. at 1271. Specifically, "[t]he criminal complaint and the plea colloquy both described the crime as 'Criminal Discharge of a Firearm at an Occupied Vehicle (Severity Level 7, Person Felony).'" Id. In concluding that Mr. Ford's conviction did not have an element requiring the use, attempted use, or threatened use of physical force against a person, the Tenth Circuit approved of the distinction the Fifth Circuit drew between "convictions for discharging a firearm at or in the direction of a person and convictions for discharging a firearm at or in the direction of an occupied building or vehicle." [6] Id. at 1271–72 (citing Hernandez-

---

[5] Hernandez-Rodriguez suggests that Alfaro would control in cases where a defendant's conviction was for targeting an occupied vehicle as opposed to an occupied dwelling, although the Fifth Circuit has not published an opinion specifically addressing the occupied vehicle scenario. See Hernandez-Rodriguez, 467 F.3d at 495 ("The Virginia statute in Alfaro is more analogous to Tex. Penal Code Ann. § 22.05(b)(2), which outlaws discharging a firearm at or in the direction of a habitation, building, or vehicle with reckless disregard for whether the structure is occupied.").

[6] The Tenth Circuit did ultimately conclude that Mr. Ford's conviction was a violent felony for purposes of the Armed Career Criminal Act, but under a definition of violent felony not implicated here—the "residual" definition, which permits treatment as a crime of violence even

18

Rodriguez, 467 F.3d 492, and Alfaro, 408 F.3d 204).  The Tenth Circuit recognized that a statute with elements that can be satisfied by directing force at an occupied structure "requires force against a building or vehicle, but not against the person inside."  Id. at 1271; see also United States v. Hernandez, 568 F.3d 827, 830 (10th Cir. 2009) (finding that an element requiring that a firearm be discharged "at or in the direction of an individual" meets the requirement that the statute have as an element the use, attempted use, or threatened use of physical force against a person).  Statutes that can be satisfied merely by directing force against property that a person happens to occupy at the time, the Tenth Circuit holds, is "one step removed" from the against-a-person requirement that federal law imposes.  Ford, 613 F.3d at 1271.

Most recently, the Seventh Circuit in United States v. Curtis, 645 F.3d 937 (7th Cir. 2011), considered a conviction under an Illinois statute prohibiting the discharge of a firearm "in the direction of another person or in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person."  Id. at 940 (quoting 720 Ill. Comp. Stat. 5/24-1.2(a)(2)).  The Seventh Circuit concluded that the statute under which Mr. Curtis was convicted categorically involves the use, attempted use, or threatened use of physical force against a

---

if there is no element requiring the use, attempted use, or threatened use of physical force against a person so long as the crime otherwise involves conduct that presents a serious potential risk of physical injury to another.  Ford, 613 F.3d at 1272–73.

19

person.  Id. at 941.  In reaching this conclusion, the Seventh Circuit emphasized that "[v]ehicles as a class are generally quite smaller than buildings," and therefore much closer in size in proportion to the average person.  Id. at 942.  Thus, because vehicles and people are relatively comparable in size, the Seventh Circuit held that Mr. Curtis's conviction for shooting in the direction of a vehicle he knew or reasonably should have known to be occupied met the against-a-person requirement "because one cannot commit that act without shooting, attempting to shoot, or threatening to shoot at that person in the vehicle."  Id.

But the scope of the Seventh Circuit's holding is limited.  The Court repeatedly emphasized that the statute it considered in Curtis permitted conviction only if the shooter knew or reasonably should have known that the vehicle was occupied.  Id. at 940–42.  The Seventh Circuit praised the government for "properly conced[ing] at oral argument" that "had [Mr.] Curtis fired in the direction of a car he should not have reasonably known to be occupied, (for instance, [Mr.] Curtis fired in the direction of a parked car awaiting crushing at a junkyard), he could not be convicted of this aggravated discharge of a firearm offense because that action would be akin to criminal damage to property—not aggravated discharge of a firearm."  Id. at 942.  That conduct, the Seventh Circuit noted, "would not involve the use, attempted use, or threatened use of physical force against another person," even if the car ultimately proved to be occupied.  Id.

20

at 942. This limitation in the Seventh Circuit's holding is important, because it signals that Court's recognition that merely directing physical force at property that happens to be occupied would not, in every case, satisfy the requirement that force be directed at a person. In a circumstance like this, the Seventh Circuit would look to the mens rea required for conviction in order to determine whether the element of targeting occupied property equates to an element requiring the use, attempted use, or threatened use of physical force against the occupant. See id.[7]

These cases—Alfaro, Ford, and Curtis—are instructive. They all support the conclusion that directing physical force against an occupied vehicle, without more, does not permit application of the USSG § 2L1.2 crime of violence enhancement.[8] We are persuaded by the logic underlying these cases. Where an element would

---

[7] In an unpublished opinion, the Fourth Circuit summarily adopted the Seventh Circuit's conclusion in Curtis without addressing its reasoning. See United States v. Wilkerson, 492 F. App'x 447, 449 (4th Cir. 2012). The Ninth Circuit has, consistent with the Seventh Circuit, found that a statute's mens rea element may preclude a finding that a conviction for discharging a firearm at occupied property is a crime of violence. See United States v. Narvaez-Gomez, 489 F.3d 970, 975–77 (9th Cir. 2007) (finding that a conviction for maliciously or willfully discharging a firearm at an inhabited or occupied house, building, vehicle, aircraft, housecar, or camper is not categorically a crime of violence under USSG § 2L1.2 because a conviction may result from purely reckless conduct).

[8] This is not to suggest, however, that the Circuits' reasoning is wholly harmonious. As Curtis recognizes, the result the Seventh Circuit reaches depends to some extent on a difference between the nature of the structure before it and the nature of the structure that was before the Fifth Circuit in Alfaro. Curtis, 645 F.3d at 942. It continues to be the case that the Fifth Circuit could reject the distinction drawn by the Seventh Circuit. And the Tenth Circuit could decline to follow the Seventh Circuit in finding that targeting an occupied vehicle may in some circumstances equate to a crime of violence so long as the defendant had a certain mental state. This nuanced tension does not, however, change the fact that Ford and Curtis directly, and Alfaro and Hernandez-Rodriguez by extension, all support the conclusion that targeting an occupied vehicle, without more, does not meet the crime of violence definition. Neither does the statute we now consider in Mr. Estrella's case implicate these potential points of future divergence among the Circuits.

21

permit conviction whenever the defendant targets property that happens to be occupied, that element is "akin to criminal damage to property," Curtis, 645 F.3d at 942, and covers conduct broader than the crimes against persons to which the USSG § 2L1.2 crime of violence enhancement is supposed to apply.

Our review of the Sentencing Commission's varying definitions for a crime of violence throughout the Sentencing Guidelines makes it clear that the USSG § 2L1.2 crime of violence enhancement should not be interpreted in a way that risks application of the enhancement to true property offenses. In USSG § 2L1.2, the Commission decided to treat as crimes of violence only those statutes that have as an element the use, attempted use, or threatened use of physical force against a person. USSG § 2L1.2, comment. (n.1(B)(iii)). By contrast, where sentence enhancements are intended to apply for both crimes against person and crimes against property, the relevant sentencing provision explicitly says so. See 18 U.S.C. § 924(c)(3)(A) (defining a crime of violence for Armed Career Criminal Act purposes as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (emphasis added)). When language is included in one statutory provision but not included in another related provision, that omission has an important meaning that we cannot ignore. See Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 763 (11th Cir. 2010).

22

Here, where the Commission omitted crimes against property from USSG § 2L1.2's crime of violence definition, we understand that only those prior convictions that are necessarily and in all circumstances crimes against persons are supposed to trigger the enhancement. Statutes that would permit conviction when the defendant targets only property do not meet the elements-based crime of violence definition that the Commission has chosen to codify and by which we are bound. See United States v. Wilk, 464 F.3d 1240, 1245 (11th Cir. 2006) ("Commentary and Application Notes of the Sentencing Guidelines are binding on the courts unless they contradict the plain meaning of the text of the Guidelines." (quotation marks omitted)). This is true even if the statute's elements can also be satisfied if the defendant targets a person.

There is no question that Fla. Stat. § 790.19's requirement that force be directed against an occupied vehicle means it will in fact capture both force directed at the property and force directed at the occupant. This is so because the element standing alone requires force against the vehicle, but not against the person inside. Alfaro, 408 F.3d at 209; Ford, 613 F.3d at 1271; Curtis, 645 F.3d at 940–42. Beyond that, there is nothing about the element which is further divisible into alternative offenses: one where the target is the occupant and one where the target is just the property that happens to be occupied at the time. Thus, once a defendant is charged under the element of targeting a vehicle while it is occupied,

23

the element can be satisfied if the jurors agree only that the vehicle was occupied at the time of the defendant's offensive conduct. See Fla. Std. Jury Intr. (Crim.) 10.13; Paul, 129 So. 3d at 1062 (noting that Fla. Stat. § 790.19's type-of-structure-targeted element can be satisfied by proof that the defendant's conduct targeted "a vehicle of any kind that was being used or occupied by any person").

And, as we next discuss, there is no mens rea requirement in Fla. Stat. § 790.19 that might translate the requirement that force be directed against an occupied vehicle into a requirement that force be directed against the occupant, as was the case in Curtis. All of this is to say that, because the alternative type-of-structure-targeted element under which Mr. Estrella was convicted does not meet the against-a-person requirement, either standing alone or when considered alongside the mens rea element, the type-of-structure-targeted element does not elevate this conviction to a crime of violence.

## B. THE MENS REA ELEMENT

The remaining element that might elevate the offense to a USSG § 2L1.2 crime of violence is the mens rea element. Fla. Stat. § 790.19 requires proof that the defendant directed force against an occupied vehicle "wantonly or maliciously." See Paul, 129 So. 3d at 1062. Florida defines wantonly to mean "consciously and intentionally, with reckless indifference to consequences and with the knowledge that damage is likely to be done to some person." Fla. Std.

24

Jury Intr. (Crim.) 10.13 (emphasis added).  Maliciously, by contrast, "means wrongfully, intentionally, without legal justification or excuse, and with the knowledge that injury or damage will or may be caused to another person or the property of another person."  Id. (emphasis added); see also State v. Kettell, 980 So. 2d 1061, 1067 (Fla. 2008) (reprinting the Florida Standard Jury Instructions definitions for wantonly and maliciously and noting that Fla. Stat. § 790.19 requires the State to prove the mens rea element "in accordance with the definitions of those terms").

An element that can be satisfied by proof that "injury or damage may be caused to . . . the property of another person" is certainly not an element that requires the force to be directed against a person.  Rather, this mens rea requirement creates an offense that is "akin to criminal property damage," because it would permit conviction even if the defendant, for example, hurled a stone in the middle of the night at a vehicle parked in a long-term parking lot that, unbeknownst to the defendant, just so happened to be occupied at the time.  See Curtis, 645 F.3d at 942.  This being the case, the mens rea element does not categorically require the use, attempted use, or threatened use of physical force against a person, as USSG § 2L1.2 requires.

But it is also true that some of the conduct encompassed within the mens rea element—wanton conduct—may be a crime of violence under USSG § 2L1.2.

25

And because the statute is structured in the alternative, it effectively creates two different crimes: wantonly shooting into an occupied vehicle and maliciously shooting into an occupied vehicle.  See Part III.A (noting that in Taylor, Shepard, and Nijhawan, the Supreme Court indicated that burglary elements structured as exhaustive lists of different structures burglarized would be amenable to application of the modified categorical approach); cf. Howard, 742 F.3d at 1348–49 (holding that a non-exhaustive list of illustrative examples of structures which can result in a burglary conviction was not a divisible element, while implying that an exhaustive list would be divisible).  We therefore apply the modified categorical approach to try to discern whether Mr. Estrella was convicted of wanton misconduct or malicious misconduct.

We cannot tell from any of the Shepard-approved sources which of the alternative mens rea elements formed the basis of Mr. Estrella's conviction.  The charging document accuses Mr. Estrella of "wantonly or maliciously" targeting "a vehicle being used or occupied by a person."  Nothing about this document clarifies which of the two alternative mental states formed the basis of Mr. Estrella's conviction.  Neither does the PSR shed light on this question, because it merely sets out the facts underlying the conviction and does not specify upon which mens rea alternative Mr. Estrella's conviction was based.  The Supreme Court has strongly rejected the notion that a sentencing court considering the

propriety of an enhancement should engage in a "post hoc investigation into the facts of predicate offenses." Moncrieffe, 133 S. Ct. at 1690. Just as it does not matter that "the jury could have readily reached consensus" on one of the alternative elements, it does not matter that the sentencing court might be able to do the same. Descamps, 133 S. Ct. at 2290. To permit the sentencing court to infer a particular mens rea based only on the factual description of the conduct would fly in the face of these recent Supreme Court cases and, perhaps most important, raise significant Constitutional questions. See id. at 2288, 2290 ("The Sixth Amendment contemplates that a jury—not a sentencing court—will find [the] facts, unanimously and beyond a reasonable doubt. And the only facts the court can be sure the jury so found are those constituting elements of the offense— as distinct from amplifying but legally extraneous circumstances.").

The mens rea element of Mr. Estrella's conviction thus does nothing to shed light on whether he was convicted of using force directed against a person, or merely directed against property. As a result, we must assume "that the conviction rested upon nothing more than the least of the acts criminalized." Moncrieffe, 133 S. Ct. at 1684 (alterations omitted) (quotation marks omitted). In light of this assumption, we cannot conclude that Mr. Estrella was convicted of the element of using force against a person. This being the case, it was error for the District Court to apply the crime of violence enhancement in sentencing Mr. Estrella.

27

## IV. CONCLUSION

Adhering to the Supreme Court's most recent decisions analyzing the categorical and modified categorical approaches, we must conclude that Mr. Estrella's conviction under Fla. Stat. § 790.19 for wantonly or maliciously throwing, hurling, or projecting a missile, stone, or other hard substance at an occupied vehicle is not a crime of violence under USSG § 2L1.2. For this reason, we **REVERSE** the District Court's enhancement of Mr. Estrella's conviction and **REMAND** for resentencing consistent with this opinion.