[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15463
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-00030-JRH-BKE-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHNNY LEE WEAVER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(January 10, 2019)

Before ROSENBAUM, JILL PRYOR and HULL, Circuit Judges.

PER CURIAM:

A jury convicted defendant Johnny Lee Weaver of several offenses arising out of a robbery of a Family Dollar store.  At sentencing, the district court found that he was a career offender under the Sentencing Guidelines and sentenced him to 360 months' imprisonment.  On appeal, Weaver raises several challenges to his conviction and sentence.

Weaver's challenges include whether:  (1) the district court violated his due process rights by admitting into evidence out-of-court and in-court identification testimony by eyewitness Denise Murray; (2) the prosecutor made an improper comment meant to inflame the jury by asking the jury to "[t]ell Johnny Weaver that this community will not tolerate him terrorizing its citizens"; (3) the district court abused its discretion by giving a jury instruction concerning flight; (4) he could be convicted for using, carrying, and brandishing a firearm during a crime of violence under 18 U.S.C. § 924 when the underlying offense was Hobbs Act robbery; and (5) his prior Florida convictions for strong-arm robbery and aggravated battery qualify as predicate offenses for purposes of the career offender enhancement in § 4B1.1 of the Sentencing Guidelines.   After careful review, and for the reasons below, we affirm.

## I.    FACTUAL BACKGROUND

### A.    The Robbery

Weaver, along with Jaron Wallace and Saintwain Roberts, robbed a Family Dollar store in Augusta, Georgia.  Two of the men robbed the store, with a third driving a getaway car.  Driving away from the laundromat next door, Denise Murray and her son, Kendrick Murray, saw the robbers exit the Family Dollar.  One of the men wore a camouflage jacket, pants, and hat.  Denise Murray testified that the man in camouflage looked at her twice, "like he was trying to figure out why we was trailing beside them as they ran."

Two police officers arrived at the scene shortly after the robbery.  Kendrick Murray described to the police the robbers' black car and the direction in which it was heading.  The police chased the car, reaching speeds in excess of 100 miles per hour.  When the car pulled into a convenience store parking lot, three men jumped out of the car and fled on foot.  The police arrested two of the men—Roberts and Wallace—but not the third.

The police discovered that the car contained items stolen from the Family Dollar, a handgun, and a camouflage jacket and hat.  The car, the handgun, and the camouflage clothing belonged to a friend with whom Weaver was staying.  The police also found Weaver's fingerprint on the car's front passenger window.

3

The police prepared two photo lineups to aid in eyewitness identification of the robbers.  Lineup one consisted of one page with six small photographs of African-American men, five non-suspects plus co-defendant Wallace.  This lineup was not introduced at trial to prevent confusion.  Lineup two contained six separate pages, each of which displayed one eight by ten inch color photograph of an African-American man.  This lineup included a photograph of Weaver and five pictures of non-suspects.

Later in the afternoon, the police met the witnesses at the Family Dollar in hopes of identifying the robbers.  Investigator David Powell stayed with the witnesses to ensure that they did not influence one another while Investigator Tim Rzasa showed individual witnesses both photo lineups.  Rzasa explained that witnesses should indicate if they recognized anyone in the photos, but that they should feel no pressure to pick one.  Denise and Kendrick Murray identified Weaver out of the second lineup.  The other two robbers, Roberts and Wallace, also viewed the second lineup and subsequently identified Weaver as the third robber.

For his role in the offense, a federal grand jury indicted Weaver for, among other crimes: (1) conspiracy to rob a commercial business, in violation of 18 U.S.C. § 1951; (2) conspiracy to use firearms during a violent crime, in violation of 18 U.S.C. § 924(o); (3) robbery of a commercial business, in violation

4

of 18 U.S.C. § 1951; and (4) using, carrying, and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  Weaver pled not guilty.

## B.    The Trial

Before the trial began, Weaver filed a motion *in limine* asking the district court to preclude the government from eliciting testimony about the second photo lineup, admitting the photo lineup into evidence, and attempting any in-court identification of Weaver.  The district court denied the motion.

At trial, the government introduced evidence of the second out-of-court lineup and related testimony.  Denise Murray identified Weaver in court as the man wearing camouflage who had run out of the Family Dollar store.  During closing argument, the prosecution said, "Tell Johnny Weaver that this community will not tolerate him terrorizing its citizens."  Weaver's counsel objected to the statement.  Before jury deliberations began, the district court gave the following instruction on flight:

> If you believe that the defendant fled from the law enforcement officer, then you may consider this conduct, along with all the other evidence, in deciding whether the government has proved beyond a reasonable doubt that he committed the crime charged.  This conduct may indicate that he thought he was guilty and was trying to avoid punishment.  On the other hand, sometimes an innocent person may flee to avoid being arrested or for some other reason.

> The jury found Weaver guilty on all counts.

5

## C.    The Sentencing

Before Weaver's sentencing, the probation office issued a presentence investigation report ("PSR").  The PSR explained that Weaver was subject to enhancement as a career offender because he had three prior crimes of violence or serious drug offense convictions.  Weaver objected to the enhancement.  At the sentencing hearing, the probation officer identified Weaver's Florida convictions for aggravated battery in 1998, armed robbery in 1999, and strong-arm robbery in 2011 as qualifying offenses for the career offender enhancement.  The district court overruled Weaver's objection, finding that his prior convictions were sufficient to trigger the career offender enhancement.  After applying the enhancement, the district court found that Weaver's guidelines range was 360 months to life imprisonment and ultimately sentenced him to a total of 360 months' imprisonment.

Weaver appealed his conviction.  While his appeal was pending, the Supreme Court decided *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015), holding that the residual clause in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague.  We ordered the parties to submit supplemental briefing to address *Johnson*.  In his initial supplemental brief, Weaver argued that he was entitled to be resentenced because in light of

6

*Johnson* the residual clause in the Sentencing Guidelines' career offender enhancement was void for vagueness.

After the Supreme Court held in *Beckles v. United States* that the Guidelines' residual clause in the career offender enhancement was not void for vagueness, 137 S. Ct. 886, 892 (2017), Weaver submitted a supplemental reply brief. Regarding the career offender enhancement, he asserted that remand was required so that the district court could apply the modified categorical approach to determine whether his prior convictions in Florida for strong-arm robbery and aggravated battery qualified as predicate offenses. He also challenged his § 924(c) conviction, arguing that his Hobbs Act robbery conviction did not qualify as a crime of violence under the statute's elements clause and also that § 924(c)'s residual clause was unconstitutionally vague.

## II.    LEGAL ANALYSIS

### A.    The District Court Properly Admitted Eye Witness Testimony Identifying Weaver.

We begin by considering Weaver's claim that his due process rights were violated when the district court admitted Denise Murray's eye witness identification of Weaver. Weaver challenges the admissibility of her identifications that were made both outside of court and in court. We conclude that the district court did not clearly err in admitting the out-of-court or in-court identifications of Weaver.

7

When considering whether an eye-witness identification procedure violates due process, we examine whether the identification procedure unduly influenced the witness to select Weaver.  We will set aside a conviction "based on eyewitness identification at trial following a pretrial identification by photograph . . . only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968).  We review for clear error a district court's finding that an identification procedure was not unduly suggestive. *United States v. Diaz*, 248 F.3d 1065, 1103 (11th Cir. 2001).  But we review *de novo* the district court's ultimate conclusion regarding a violation of due process. *See United States v. Whatley*, 719 F.3d 1206, 1213 (11th Cir. 2013) (applying *de novo* review to constitutional questions).

### 1.    Out-of-Court Identification

We use a two-step process to assess the constitutionality of a trial court's decision to admit an out-of-court identification.  *See Diaz*, 248 F.3d at 1102.  We first ask whether the original identification procedure was unduly suggestive.  *Id.* If it was, we then consider whether the identification was reliable under the totality of the circumstances.  *Id.*  "When determining whether a photo array is unduly suggestive, we consider the size of the array, the manner of its presentation, and

the details of the photographs in the array." *United States v. Perkins*, 787 F.3d

1329, 1344 (11th Cir. 2015).[1]

We conclude that the photo array presented to Denise Murray was not

unduly suggestive. It contained six photos, all headshots of African-American men

in blue prison jumpsuits. Although there were minor differences between

Weaver's picture and the pictures of the other men in the array, the district court

found that Weaver's photograph was not so different as to "stick out." Each of the

men in the array had closely cropped hair and similar skin tones. Although

Weaver claims that he was shorter and older, with lighter skin tone, and weighed

less than the other men in the photos, a reasonable viewer could not discern a

significant difference in height, weight, age, or complexion from the headshots.

Moreover, there were no distinguishing features, marks, or tattoos visible in

Weaver's picture to make him stand out from the other men's photos.

---

[1] The government argues that Weaver abandoned any argument regarding the admission of testimony about Denise Murray's pretrial identification by failing to sufficiently develop his "contentions and the reasons for them." *See* Fed. R. App. P. 28(a)(8)(A) ("The appellant's brief must contain . . . the argument, which must contain: (A) appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . . ."). Weaver arguably abandoned this issue because on appeal he fails to challenge explicitly the district court's determination that the pretrial identification procedure was not unduly suggestive. The section of Weaver's brief concerning the identification includes contentions regarding Denise Murray's reliability and potential confusion over which lineups she saw. These paragraphs set forth defense counsel's objections at trial without elaboration. "We have rejected the practice of incorporating by reference arguments made to the district courts." *United States v. Kapordelis*, 569 F.3d 1291, 1312 (11th Circ. 2009) (internal quotation marks omitted). But we need not definitively decide whether Weaver waived the issue because even assuming that he preserved it, the district court committed no clear error in admitting the identifications.

Additionally, the district court found no evidence "that the officers administering the line-up made suggestions or put pressure on the eye-witnesses to choose a particular photograph."  The district court did not clearly err in finding that the photo array was not unduly suggestive, and thus we need not consider whether the identification was reliable.  *See Diaz*, 248 F.3d at 1102 ("If we conclude that it was suggestive, we then must consider whether, under the totality of the circumstances, the identification was nonetheless reliable.").

## 2.    In-Court Identification

The district court also did not clearly err in allowing Denise Murray's in-court identification.  "An in-court identification, even if preceded by a suggestive out-of-court identification procedure, is nevertheless admissible if the in-court identification has an independent source."  *United States v. Cannington*, 729 F.2d 702, 711 (11th Cir. 1984).  The factors used to determine whether an in-court identification had a reliable, independent source are: "the witness's opportunity to observe the defendant at the time of the offense, the witness's degree of attention, the degree of certainty shown at the confrontation, and the length of time between the crime and the confrontation."  *Id.*  Denise Murray watched Weaver run from the Family Dollar immediately after the robbery.  She accurately described what Weaver was wearing during the robbery.  She never hesitated in stating that Weaver was the individual she saw.  And she identified Weaver as the man who

10

had robbed the Family Dollar very soon after the robbery occurred. Denise Murray's in-court identification meets the independent source test. As a result, the district court did not clearly err in admitting it.

## B.    No Prosecutorial Misconduct Occurred During Closing Argument.

Weaver argues that a comment made by the government during closing argument, to "[t]ell Johnny Weaver that this community will not tolerate him terrorizing its citizens," inflamed the jury. In considering whether a comment by the government during closing argument rises to the level of prosecutorial misconduct, we apply *de novo* review. *United States v. Sosa*, 777 F.3d 1279, 1294 (11th Cir. 2015). The government's statement to the jury during closing argument did not amount to prosecutorial misconduct.

To establish prosecutorial misconduct, "(1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *United States v. Wilson*, 149 F.3d 1298, 1301 (11th Cir. 1998) (internal quotation marks omitted). Improper statements may be rectified by a curative instruction. *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009).

First, the statement made by the prosecutor in Weaver's case was not improper. A prosecutor is "forbidden to make improper suggestions, insinuations and assertions calculated to mislead the jury and may not appeal to the jury's passion or prejudice." *United States v. Rodriguez*, 765 F.2d 1546, 1560 (11th Cir.

11

1985) (internal quotation marks omitted). "Appeals to the jury to act as the conscience of the community, unless designed to inflame the jury, are not per se impermissible." *United States v. Kopituk*, 690 F.2d 1289, 1342-43 (11th Cir. 1982).

In *Kopituk*, we determined that the following statement during closing argument was not improper:

> (Y)ou ladies and gentlemen, representing the citizens of this community and the citizens of Southeastern United States by your verdict telling them that enough is enough. We ask you by your verdict, ladies and gentlemen, to help clean up Dodge Island. We ask you by your verdict to help rid the ports of Jacksonville, Savannah and Charleston of people who by participating, directly and indirectly, in racketeering activity are corrupting our nation's ports, who by misusing and utilizing their position of fiduciary responsibility on behalf of unions and on behalf of different companies are influencing and controlling and affecting the lives of people and everyone that works in these different cities.

*Id.* at 1342 (alteration in original). Specifically, we stated that the foregoing "did not constitute a direct suggestion that the jury had a personal stake in the outcome of the case" and thus approached, but did not breach, "the line demarcating permissible oratorical flourish from impermissible comment calculated to incite the jury against the accused." *Id.* Moreover, even assuming that the statement was improper, we concluded that it was not so offensive as to prejudice the defendant's substantial rights. *Id.* at 1343.

The statement made in Weaver's case was less severe than the statement made in *Kopituk*. If a comment asking a jury to rid the ports of corruption and racketeering was not designed to inflame the jury, the prosecutor's statement here certainly was not. *Id.* at 1342.

Second, even if the prosecutor's statement was improper, it did not prejudice Weaver's substantial rights. "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." *Wilson*, 149 F.3d at 1301 (internal quotation marks omitted). Four factors guide our determination as to whether a prosecutor's conduct had a reasonable probability of changing the outcome of a trial:

> (1) the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether they are isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof to establish the guilt of the accused.

*Lopez*, 590 F.3d at 1256. We consider whether a defendant's substantial rights were prejudiced "in the context of the entire trial and in light of any curative instruction." *Wilson*, 149 F.3d at 1301 (internal quotation marks omitted).

Under the four-part test set out in *Lopez*, the statement in Weaver's trial cannot be said to have prejudicially affected Weaver's substantive rights. The statement had little tendency to mislead the jury or prejudice Weaver. The

13

statement was isolated and minimal—only one sentence in 19 pages of closing argument.  We cannot tell from this record whether the statement was deliberately or accidentally placed before the jury.  But given the overwhelming evidence against Weaver, the outcome of his trial would not have been different but for the single statement made in closing argument.

Furthermore, the district court cured any prejudice by issuing curative instructions.  Before closing argument, the district court told the jury that "what the lawyers say in the final argument—in fact, what the lawyers say in any argument—are not to be considered as evidence whatsoever, or, in addition, it's not to be considered instructions on the law."  Additionally, in its jury instructions the district court informed the jury that its decision must be based on the evidence presented at trial and again indicated that what the lawyers said was not evidence and not binding.  We presume that the jury followed these instructions.  *See United States v. Shenberg*, 89 F.3d 1461, 1472 (11th Cir. 1996).

## C.    The District Court Did Not Abuse Its Discretion in Instructing the Jury.

Turning to whether the district court erred by giving a jury instruction concerning flight, we review jury instructions for an abuse of discretion.  *United States v. Williams*, 541 F.3d 1087, 1089 (11th Cir. 2008).  Here, the district court did not abuse its discretion when it gave an instruction on flight.

14

An erroneous jury instruction constitutes grounds for reversal only if a reasonable likelihood exists that the error affected the defendant's substantial rights. *Id.* "Evidence of flight is admissible to demonstrate consciousness of guilt and thereby guilt." *Id.* (internal quotation marks omitted). If sufficient evidence is presented so that the jury could reasonably conclude that the defendant fled to avoid the charged crime, the district court does not abuse its discretion by giving a flight instruction. *Id.*

The district court did not abuse its discretion because there was sufficient evidence from which the jury reasonably could conclude that Weaver fled to avoid the charged crimes. The evidence showed that, immediately after the robbery, Weaver made multiple attempts to flee from law enforcement officers. Accordingly, the district court did not abuse its discretion by giving the flight instruction to the jury.[2]

**D.  Binding Precedent Dictates that Weaver's Hobbs Act Robbery Offense Qualifies as a Crime of Violence for Purposes of § 924(c).**

Weaver challenges his conviction under 18 U.S.C. § 924(c) for brandishing a firearm during a crime of violence, arguing that Hobbs Act robbery does not constitute a crime of violence for purposes of § 924(c). After the Supreme Court

---

[2] Weaver also argues that he was denied a fundamentally fair trial due to the cumulative errors in admitting the eyewitness identification testimony, the prosecutor's closing argument, and the jury instructions. Because there were no individual errors, no cumulative error exists. *United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004).

decided *Johnson*, we ordered the parties to submit supplemental briefing. In his initial supplemental brief, Weaver did not challenge his § 924(c) conviction. Weaver challenged this conviction for the first time in his supplemental reply brief. Assuming for purposes of this appeal that Weaver properly preserved this issue, binding precedent dictates that we treat Hobbs Act robbery as a crime of violence for purposes of § 924(c).

Under § 924(c), there are two ways that a predicate offense can qualify as a crime of violence. The statute specifies that a crime of violence is an offense that is a felony and

(A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Subsection (A) is commonly called the "elements clause" and subsection (B) the "residual clause." *Ovalles v. United States*, 905 F.3d 1231, 1238 (11th Cir. 2018) (en banc). Weaver maintains that Hobbs Act robbery does not meet the definition of a crime of violence under the elements clause and that the residual clause in § 924(c)(3)(B) is unconstitutionally vague.

Weaver's argument that Hobbs Act robbery does not meet the definition of a crime of violence under the elements clause is foreclosed by binding precedent. *See United States v. St. Hubert*, 909 F.3d 335, 346 (11th Cir. 2018). In *St. Hubert*,

16

this Court held that "Hobbs Act robbery is a crime of violence under § 924(c)(3)(A)'s [elements] clause." *Id.* We remain bound by our prior panel decision "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this Court sitting *en banc*." *United States v. Sneed*, 600 F.3d 1326, 1332 (11th Cir. 2010).

Weaver also argues that his Hobbs Act robbery cannot qualify under the residual clause in § 924(c)(3)(B) because that clause is unconstitutionally vague. But this Court in *Ovalles* rejected a void-for-vagueness challenge to § 924(c)(3)(B). 905 F.3d at 1252. Because *Ovalles* forecloses Weaver's vagueness challenge to the residual clause, his challenges to his conviction under § 924(c) fail.

## E. The District Court Did Not Err in Applying a Career Offender Enhancement.

Weaver also argues that the district court erred in applying the career offender enhancement. *See* U.S.S.G. § 4B1.1(b) (2014). This argument, too, is foreclosed by precedent.

The career offender enhancement increases a defendant's offense level and criminal history category for purposes of calculating his sentencing range under the Sentencing Guidelines. *See id.* The enhancement applies when a defendant commits a felony "that is either a crime of violence or a controlled substance offense" and "has at least two prior felony convictions of either a crime of violence

17

or a controlled substance offense." *Id.* § 4B1.1(a). The guidelines in effect at the time of Weaver's sentencing defined a crime of violence to include any offense under federal or state law, punishable by a term of imprisonment exceeding one year that (1) "has an element the use, attempted use, or threatened use of physical force against the person of another," (2) is one of a list of enumerated offenses, or (3) "otherwise involves conduct that presented a serious potential risk of physical injury to another." *Id.* § 4B1.2(a); *see* U.S.S.G. § 4B1.1 cmt. n.1 (incorporating the definition of "crime of violence" from U.S.S.G. § 4B1.2).

To determine whether a prior conviction qualifies as a crime of violence, we generally apply a "categorical approach," looking no further than the statute of conviction. *United States v. Estrella*, 758 F.3d 1239, 1244 (11th Cir. 2014). When a statute is divisible, meaning that it sets out multiple, alternative elements, we may apply a "modified" categorical approach to determine which alternative version of the elements the defendant was convicted of. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016); *Descamps v. United States*, 570 U.S. 254, 263-64 (2013). Under the modified categorical approach, we may look beyond the statute of conviction to a limited class of documents from the record of conviction to determine which version of the elements the defendant was convicted of. *See Mathis*, 136 S. Ct. at 2249.

18

Weaver asserted in supplemental briefing that the district court erred in applying the career offender enhancement because the residual clause in the career offender guideline was void for vagueness. But after Weaver submitted his supplemental brief, the Supreme Court held in *Beckles* that the Sentencing Guidelines are not subject to a vagueness challenge under the Due Process Clause and, accordingly, that § 4B1.2(a) is not void for vagueness. 137 S. Ct. at 895. As Weaver concedes, *Beckles* forecloses his vagueness challenge.

Weaver advanced a second reason for challenging the district court's application of the career offender enhancement, claiming that he is entitled to be resentenced so that the district court may apply the modified categorical approach to determine whether his prior convictions for aggravated battery and strong-arm robbery qualify as crimes of violence. But our precedent dictates that each of these crimes categorically qualifies as a crime of violence under the elements clause of the career offender guideline.

Weaver first contends that his conviction for Florida aggravated battery may not qualify as a crime of violence. In Florida, "a person commits aggravated battery by committing a battery: (1) that intentionally or knowingly causes great bodily harm, permanent disability, or disfigurement; (2) while using a deadly weapon; or (3) upon a victim whom the offender knows to be pregnant." *Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328, 1341 (11th Cir. 2013) (citing Fla.

Stat. § 785.045), *abrogated on other grounds by Johnson*, 135 S. Ct. 2551.

Because the aggravated battery statute is divisible, meaning it sets forth alternative

crimes with different elements, we use the modified categorical approach to

determine which of these alternative crimes Weaver was convicted of, and based

on that crime's elements, whether his conviction for aggravated battery qualifies as

a predicate felony under the elements clause.  *Id.*

Weaver claims that it is unclear whether he was charged with and convicted

of committing a battery that intentionally or knowingly causes great bodily harm,

permanent disability, or disfigurement under § 784.045(1)(a)(1) or while using a

deadly weapon under § 784.045(1)(a)(2).  Notably, he advances no argument that

he was prosecuted for committing a battery upon a pregnant woman under Fla.

Stat. § 784.045(1)(b).  But it is irrelevant whether Weaver committed a battery that

intentionally or knowingly causes great bodily harm, permanent disability, or

disfigurement under § 784.045(1)(a)(1) or while using a deadly weapon under

§ 784.045(1)(a)(2) because we recognized in *Turner* that both subsections qualify

as violent felonies under the elements clause.[3]  *Turner* thus compels us to conclude

that Weaver's aggravated battery conviction qualifies as a crime of violence and

can serve as a predicate for the purposes of the career offender enhancement.  *See*

---

[3] "Although *Turner* addressed the 'elements' clause of the ACCA, that clause is identical to the elements clause of § 4B1.2(a)(1)."  *United States v. Golden*, 854 F.3d 1256, 1256-57 (11th Cir. 2017) (citation omitted).  As such, *Turner* is binding.

20

*United States v. Golden*, 854 F.3d 1256, 1256-57 (11th Cir. 2017) (reaffirming the validity of *Turner*'s holding as to aggravated battery).

Next, Weaver contends that his conviction for strong-arm robbery does not qualify as a crime of violence. He argues that a Florida strong-arm robbery conviction does not qualify as a crime of violence. We have repeatedly held that strong-arm robbery under Florida law qualifies a violent felony under ACCA's elements clause. *United States v. Fritts*, 841 F.3d 937, 941-42 (11th Cir. 2016); *United States v. Lockley*, 632 F.3d 1238, 1245 (11th Cir. 2011). We acknowledge that in *Stokeling v. United States*, 138 S. Ct. 1438 (2018), the Supreme Court is presently considering the question of whether Florida robbery qualifies as a violent felony under the elements clause. But even if the Supreme Court decides in *Stoekling* that this offense does not qualify under the elements clause, our precedent still dictates that the offense qualifies as a crime of violence under the career offender's residual clause. *See Lockley*, 632 F.3d at 1245. This precedent thus compels us to conclude that strong-arm robbery qualifies as a crime of violence and can serve as a predicate for purposes of the career offender enhancement.

21

### III.  CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court.[4]

**AFFIRMED.**

---

[4] Also pending before the Court is the government's Motion to Strike Weaver's Supplemental Reply Brief.  That motion is DENIED as moot.